[Civ. No. 16801. Fourth Dist., Div. One. Mar. 20, 1978.]

WILLIAM R. THORLEY, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY,
Respondent;
THOMAS J. THORLEY, Real Party in Interest.

**COUNSEL**

Charles F. Abbott, Peter J. Mueller and Mueller & Abbott for Petitioner.

No appearance for Respondent.

Higgs, Fletcher & Mack and Thomas E. Miller for Real Party in Interest.

**OPINION**

**BROWN (Gerald), P. J.**—Petitioner William R. Thorley seeks a prerogative writ to compel the San Diego County Superior Court to grant a stay of proceedings, to vacate its trial setting, and to admit a foreign will to probate for ancillary administration.

The principal question presented is whether an appealable Utah judgment admitting a will to probate is a final judgment entitled to full faith and credit by the courts of this state.

Lester R. Thorley (decedent) died on December 21, 1975, in Cedar City, Utah. He left two wills, one dated February 12, 1964, executed in Escondido, California (California will), and one dated May 19, 1975, executed in Cedar City, Utah (Utah will).

Under the California will, the estate passes to Thomas and Melvin Thorley, California residents and real parties in interest. Under the Utah will, the estate passes to William R. Thorley, a Utah resident and petitioner in this proceeding.

At the date of decedent's death, the estate was valued at approximately $260,000, consisting of $200,000 in California financial institutions and $60,000 worth of commercial real property located in Utah.

On December 29, 1975, William petitioned in Utah to admit the Utah will to probate. On January 6, 1976, Thomas filed a petition for probate of the California will in California. William promptly filed a contest in California asserting the revocation of the California will by the more recent Utah will. Within days, Thomas filed his contest to the Utah will in the Utah district court, alleging undue influence.

On February 2, 1976, after certain technical defects in giving notice of the hearing of "Petition for Probate of Will," William filed another petition for probate of the Utah will in Utah; Thomas did not contest the February 2 filing, choosing instead to take advantage of section 75-3-12 of the Utah Uniform Probate Code, which permits a filing of contest within six months after the admission of the will to probate.

On April 14, 1976 the District Court of Iron County, Utah, admitted the Utah will to probate. Relying on that action, William moved for summary judgment and/or a stay of the California proceedings which had been set for hearing on May 17, 1976. On June 9, 1976 the California court denied the motion for summary judgment pending final determination of the Utah proceedings but granted a stay on the ground of comity.

The next round was fired in October 1976 when Thomas filed his contest after probate in Utah. A jury trial was set on the issue of domicile; a trial on the merits of his undue influence claim was to follow. After a number of continuances the parties and court agreed to hear the matter on May 23, 1977.

On that date, after the Utah court heard and denied Thomas' motions for a continuance, stay of proceedings, and change of venue, the trial on the domicile issue began. After five days of receiving evidence and argument, the jury found by special interrogatories that the decedent, a long-time California resident, had become domiciled in Utah.

After the trial on domicile, the Utah court discovered the jury had prematurely discussed the question of undue influence among themselves. As a result, the jury was dismissed, and the matter was continued to June 28, 1977.

On June 24, 1977, upon Thomas' motion supported by affidavit, the San Diego County Superior Court, expressing shock as to the manner in which the Utah proceedings were conducted, removed the existing California stay order and set the California matter for hearing on July 26, 1977.

On June 27, 1977, the Utah Supreme Court denied a "Petition for Interlocutory Appeal" which had been filed by Thomas. This prompted renewed motions in Utah by Thomas for a continuance and a change of venue. Both motions were denied on June 28, 1977 and the Utah district court ordered the trial to go forward on the issue of undue influence.

At this point, Thomas abandoned the Utah contest and withdrew from the proceedings in Utah. William presented his case and the Utah court entered a judgment in his favor, readmitting the Utah will to probate on July 1, 1977.

William, then moved the San Diego County Superior Court for orders reinstating the stay, vacating the trial setting, and admitting the Utah will to probate for ancillary administration. The motions were based on the mandate of the full faith and credit clause (U. S. Const., art. IV, § 1), the doctrine of res judicata, and on California Probate Code section 362.

On July 8, 1977, the superior court heard arguments and denied William's motions. The disposition of the interlocutory appeal and the rendition of the final Utah judgment were presented to the lower court during argument.

Notice of appeal to the Utah Supreme Court was then filed by Thomas on July 28, 1977. At issue in that appeal are alleged errors and violations of due process in the Utah district court.

William, on August 19, 1977, filed the present petition for an extraordinary writ seeking, in essence, to compel the trial court to grant his motions.

Because of the problems and expense associated with multiple proceedings, the increasing possibility of inconsistent judgments, and the importance of the principles at issue, we concluded appeal from judgment was an inadequate remedy and issued an order to show cause.

William's position is straightforward: The Utah court, having personal and subject matter jurisdiction, has determined the validity of the Utah will. Therefore, it is urged, the decree admitting the Utah will to probate is a final judgment on the merits, binding on Thomas under the doctrines of res judicata and collateral estoppel, and entitled to full recognition by California courts under the full faith and credit clause of the federal Constitution[1] and California Probate Code section 362.[2] Accordingly, the superior court, by denying William's motions to reinstate the stay order, vacate the trial setting, and admit the Utah will into probate for ancillary administration, is claimed to have abused its discretion and acted in excess of its jurisdiction.

Real parties in interest contend the action of respondent court was proper because the decree of the Utah court admitting the Utah will to probate was not a final judgment on the merits entitled to res judicata effect at the time the California court acted. Thus, it is argued, the full faith and credit clause, a national res judicata doctrine, was not violated. Furthermore, it is maintained, even if such a judgment ordinarily would be entitled to full faith and credit, due process violations occurring in connection with the Utah proceeding compel that this judgment be treated differently. Finally, real parties assert Probate Code section 362 is inapplicable to the case at bar.

---

[1] Article IV, section 1, of the United States Constitution provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

[2] That section provides: "If it appears from such authenticated order or decree, or if it be otherwise proved in cases in which there is no such order or decree, that the will has been admitted to probate in another state or country, or established or proved in accordance with the laws thereof, in a proceeding in which all interested parties were given notice and an opportunity for contest and in which the determination has become final, is not subject to revocation, and is based upon a finding that the decedent was domiciled at his death in that other state or country, and that it was valid according to the law of the place in which the testator was domiciled at the time of his death, or according to the law of this state, no contest shall be permitted either before or after admission to probate and it shall be admitted to probate and have the same force and effect as a will first admitted to probate in this state, and letters testamentary or of administration with the will annexed shall issue thereon to the petitioner."

■ It is well settled that the principle of full faith and credit requires only that a valid judgment of one state be given the same effect in a sister state as it would have in the rendering state (*Reynolds* v. *Stockton,* 140 U.S. 254, 264 [35 L.Ed. 464, 467, 11 S.Ct. 773, 775]); a judgment need not be given greater effect abroad than it enjoys at home. Thus, "[f]ull faith and credit demands only that the Utah decree receive as much recognition in California as it would in Utah." (*Farley* v. *Farley,* 227 Cal.App.2d 1, 6 [38 Cal.Rptr. 357]; *Halvey* v. *Halvey,* 330 U.S. 610, 614 [91 L.Ed. 1133, 1135-1136, 67 S.Ct. 903, 906].)

As a corollary of this broader principle, "[a] judgment will not be recognized or enforced in other states insofar as it is not a final determination under the local law of the state of rendition." (Rest.2d Conf. of Laws, § 107.) Since a judgment will not have the force of res judicata as to issues that remain subject to final determination, a state is not required by the full faith and credit clause to recognize or enforce a judgment rendered in a sister state insofar as the judgment is not a final determination. (*Id.,* com. b.)

■ We must initially determine whether the decree of the District Court of Iron County, Utah, was a final judgment for the purpose of full faith and credit. At the time the superior court denied petitioner's motions, July 8, 1977, the decree of the Utah district court was entered but was still appealable.[3] ■ Since "[t]he . . . law of the state of rendition determines whether . . . a judgment is final" (Rest.2d Conf. of Laws, § 107, com. c), we turn to Utah law.

■ Section 75-1-304 of the Utah Uniform Probate Code states: "Unless specifically provided to the contrary in this code or unless inconsistent with its provisions, the rules of civil procedure, including the rules concerning vacation of orders and appellate review, govern formal proceedings under this code."

Rule 81, subdivision (b) of the Utah Rules of Civil Procedure provides: "These Rules shall not apply to proceedings in uncontested probate and guardianship matters, but shall apply to all proceedings subsequent to the joinder of issue therein, including the enforcement of any judgment or order entered."

---

[3]The decree was apparently entered on June 29, 1977. Rule 73 of the Utah Rules of Civil Procedure provides: "When an appeal is permitted from a district court to the Supreme Court, the time within which an appeal may be taken shall be one month from the entry of the judgment or order appealed from unless a shorter time is provided by law . . . ."

Rule 62 of the Utah Rules of Civil Procedure pertains generally to the enforcement of judgments. Subdivision (a) provides: "Execution or other proceedings to enforce a judgment may issue immediately upon the entry of the judgment, unless the court in its discretion and on such conditions for the security of the adverse party as are proper, otherwise directs." Subdivision (d) provides for stay upon appeal: "When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay . . . . The bond may be given at or after the time of filing the notice of appeal. The stay is effective when the supersedeas bond is approved by the court."

In the matter before us, no evidence was presented to the superior court to show that an appeal was pending or that enforcement of the Utah judgment was stayed by the giving of a satisfactory supersedeas bond. Notice of appeal to the Utah Supreme Court was not even filed until July 28, 1977, 20 days after petitioner's motions were heard and denied by the superior court. Absent such notice and the giving of a bond, the judgment of the Utah district court was subject to immediate enforcement under the Utah statutes noted, and nonfinality of the Utah judgment cannot justify the superior court's rulings.

Since the Utah decree was final for purposes of execution in the state of rendition, it could be regarded no less than final in California.

■ As a second defense to William's reliance upon the full faith and credit clause, real parties argue, in essence, the Utah decree is not entitled to such constitutional deference because it was obtained in proceedings which deprived them of due process.[4]

Upon a claim that a foreign judgment is not entitled to full faith and credit, inquiry into the legality of proceedings in a court of a sister state is narrowly circumscribed by case law. The permissible scope of inquiry upon such a party is limited to whether the court of rendition has "fundamental" jurisdiction (see generally *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 288-291 [109 P.2d 942, 132 A.L.R. 715]). In other words, a judgment entered by one state must be recognized by another state if the state of rendition had jurisdiction over the parties and the subject matter and all interested parties were given reasonable notice and an opportunity to be heard (*Milliken* v. *Meyer,* 311 U.S. 457, 462 [85

---

[4]The transcript of proceedings conducted on July 8, 1977, reveals this argument was accepted and became the basis for the superior court's rulings.

L.Ed. 278, 282-283, 61 S.Ct. 339, 342, 132 A.L.R. 1357]; *Durfee* v. *Duke,* 375 U.S. 106 [11 L.Ed.2d 186, 84 S.Ct. 242]; Rest., Judgments, § 11; see also *Intermill* v. *Nash,* 94 Utah 271 [75 P.2d 157, 162]; *Pacific Mut. Life Ins. Co.* v. *McConnell,* 44 Cal.2d 715, 725 [285 P.2d 636]; *Craig* v. *Superior Court,* 45 Cal.App.3d 675, 680 [119 Cal.Rptr. 692]). Succinctly stated: "[W]hile it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of [the Supreme] Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." (*Durfee* v. *Duke, supra,* 375 U.S. 106, 111 [11 L.Ed.2d 186, 191, 84 S.Ct. 242, 245].)

This doctrine limiting inquiry by the court where enforcement is sought to the jurisdiction of the court rendering the judgment is unambiguously established in cases involving jurisdiction over the person (*Baldwin* v. *Iowa State Traveling Men's Ass'n.,* 283 U.S. 522 [75 L.Ed. 1244, 51 S.Ct. 517]) and jurisdiction over the subject matter (*Davis* v. *Davis,* 305 U.S. 32 [83 L.Ed. 26, 59 S.Ct. 3, 118 A.L.R. 1518]; *Stoll* v. *Gottlieb,* 305 U.S. 165 [83 L.Ed. 104, 59 S.Ct. 134]; *Treinies* v. *Sunshine Mining Co.,* 308 U.S. 66 [84 L.Ed. 85, 60 S.Ct. 44]; *Sherrer* v. *Sherrer,* 334 U.S. 343 [92 L.Ed. 1429, 68 S.Ct. 1087, 1097, 1 A.L.R.2d 1355]; *Durfee* v. *Duke, supra,* 375 U.S. 106, 111-115 [11 L.Ed.2d 186, 191-193, 84 S.Ct. 242, 245-247]).

In this matter there can be little doubt that real parties appeared in Utah and fully litigated the jurisdictional issue of the decedent's domicile. While the full faith and credit clause does not prevent a challenge to a previous finding of domicile in another state by a person who was not personally subject to the jurisdiction of the first state court (*Riley* v. *New York Trust Co.,* 315 U.S. 343 [86 L.Ed. 885, 62 S.Ct. 608]; see *Estate of Reynolds,* 217 Cal. 557 [20 P.2d 323]; *Matter of Estate of Bills* (Tex.Civ.App.) 542 S.W.2d 943), such challenge is precluded to persons who were personally subject to the jurisdiction of the first court (*Riley* v. *New York Trust Co., supra,* 315 U.S. 343, 353, fn. 13 [86 L.Ed. 885, 893-894, 62 S.Ct. 608, 614]; *In re Hunter's Estate* 190 Okla. 284 [122 P.2d 1017]; *Roberts* v. *Bathurst* (5th Cir. 1940) 112 F.2d 543, 545; *In re Fischer's Estate* 118 N.J.Eq. 599 [180 A. 633]; *Hopper* v. *Nicholas* 106

Ohio St. 292 [140 N.E. 186]). Since the District Court of Iron County concluded, in a proceeding in which Thomas fully participated, that decedent was domiciled in Utah and the court therefore had jurisdiction to probate the Utah will, Thomas is bound by that court's later decree upholding the validity of the Utah will and admitting it to probate. His voluntary withdrawal from the will contest after the adverse jurisdictional determination is of no consequence.

The errors in the Utah proceedings asserted by Thomas, even those of constitutional dimension, relate not to fundamental jurisdiction, but to the legality of the Utah proceedings.[5] These claims are fully cognizable in his appeal to the Utah Supreme Court. They need not and should not have been adjudicated by the San Diego County Superior Court in determining whether to accord full faith and credit to the Utah decree.

Real parties urge nevertheless that this case presents such unusual circumstances that it was appropriate for the superior court to entertain such an attack. They cite *Pacific Mut. Life Ins. Co.* v. *McConnell, supra,* 44 Cal.2d 715, 727, where the California Supreme Court stated: "There are some recognized exceptions to the general rule that collateral attack will not be allowed where there is fundamental jurisdiction even though the judgment is contrary to statute. For example, a judgment may be collaterally attacked where unusual circumstances were present which prevented an earlier and more appropriate attack."

As an example of such unusual circumstances, the Supreme Court explained *Burtnett* v. *King,* 33 Cal.2d 805 [205 P.2d 657, 12 A.L.R.2d 333]. In that case, "collateral attack was permitted against a default divorce decree which awarded all the community property to the plaintiff in the absence of a prayer therefor in the complaint, contrary to the provision in section 580 of the Code of Civil Procedure that relief in a default case cannot exceed that demanded in the complaint. *The defendant in the divorce action had no notice or warning* that the property would be affected by a default judgment, and the opinion points out that the decision would sanction a trap if it held that his property rights had been disposed of since he would properly have assumed from the

[5]Real parties indicate they were prejudiced because the Utah court allowed jurors familiar with petitioner and his attorneys to hear the case, a purported conflict of interest on the part of petitioner's attorney, several denials of motions to change venue to another county in Utah, and the contrasting absence of any ties of real parties to the Utah community. In sum, we are urged the totality of circumstances "smells of impropriety" and bias.

complaint that his rights to the property were not to be litigated at that time." (*Pacific Mut. Life Ins. Co.* v. *McConnell, supra,* 44 Cal.2d 715, 727; italics added.) Since there was nothing in the *Pacific Mutual* case to prevent the questions raised by collateral attack from being litigated in the previous proceeding, the *Burtnett* case was deemed "readily distinguishable." (*Id.*)

In similar contrast to *Burtnett* v. *King, supra,* 33 Cal.2d 805, we are not faced with inadequacy of notice. Real parties not only had the opportunity to be heard, they exercised it. We thus resolve that the alleged deficiencies in the Utah proceedings are properly raised by direct attack in the Utah Supreme Court.

■ Finally, real parties suggest that the Utah decree lacked the finality required by Probate Code section 362 (see fn. 2). They acknowledge that section 362 implements the values of res judicata and full faith and credit, but seize upon the phrase "in which the determination has become final, is not subject to revocation. . ." and argue that by virtue of the timely filing of the notice of appeal in Utah the Utah decree is "subject to revocation" and therefore not final.

The argument fails for several reasons. First, at the time of the rulings at issue, notice of appeal of the Utah decree had not yet been filed. Second, revocation literally refers to a recall or making void of some act by the actor—in this case, a lower court. An appellate court does not revoke a judgment; it affirms, reverses, or modifies a judgment (see Code Civ. Proc., § 43). Thus "subject to revocation" refers to nonappealable interim orders of lower tribunals. Third, the construction urged, for reasons explained, would be inconsistent with the mandate of full faith and credit, because it would deny recognition of all foreign probate judgments pending appeal irrespective of the enforceability of such judgments in the rendering state; a construction of doubtful constitutional validity is avoided if reasonably possible (*Miller* v. *Municipal Court,* 22 Cal.2d 818, 828 [142 P.2d 297]; *Palermo* v. *Stockton Theatres, Inc.,* 32 Cal.2d 53, 59-60 [195 P.2d 1]).

■ Having concluded the Utah decree was entitled to full faith and credit, we now address whether denial of William's motions constituted abuses of discretion.

The superior court's denial of the motions to reimpose a stay of the California proceedings and vacate the trial setting cannot be sustained.

"Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause." (*Baldwin* v. *Iowa State Traveling Men's Ass'n., supra,* 283 U.S. 522, 525-526 [75 L.Ed. 1244, 1247, 51 S.Ct. 517].) The full faith and credit clause is designed to avoid relitigation of domicile and multiplicity to which William would be subjected if the proceedings to probate the California will went forward. In the face of the Utah judgment, it was an abuse of discretion to deny a stay of the California proceedings and to deny vacating of the trial setting.

■ However, we reach a different conclusion as to denial of William's motion to admit the Utah will to probate for ancillary administration.

As we have noted, at the time of the motion the Utah judgment was still subject to direct attack in Utah. In fact, an appeal to the Utah Supreme Court was filed and is now pending.

Usually, "the courts of the state in which enforcement of the judgment is sought will either stay their judgment, or stay execution thereof, pending the determination of the appeal" (Rest.2d Conf. of Laws, § 107, com. e; § 112, com. b). This rule is supported by reason.

If, while the Utah judgment is still subject to direct attack in Utah, California courts proceeded to enforce that decree by admitting the Utah will to probate and issuing letters, undesirable results might occur.

Reversal of the Utah judgment on appeal would destroy its entitlement to full faith and credit. Obviously, "a judgment will not be enforced in other states if it has been vacated in the state of rendition." (Rest.2d Conf. of Laws, § 112.) However, reversal of the Utah judgment by the Utah Supreme Court would not ipso facto nullify orders entered in California (see *Reed* v. *Allen,* 286 U.S. 191 [76 L.Ed. 1054, 52 S.Ct. 532, 81 A.L.R. 703]).

To avoid the possibility of such consequences, we conclude it would not have been an abuse of discretion for the superior court to delay

admitting the Utah decree to probate until it was no longer subject to direct attack in Utah. ██ Since denial of William's motion would have been permissible on this ground, we need not disturb the superior court's ruling on this particular motion, though it was based on the mistaken determination the Utah decree was not entitled to full faith and credit.[6]

Let a peremptory writ of mandate issue compelling the San Diego County Superior Court (1) to vacate its order dated July 29, 1977 insofar as it denies William's motions to stay the California proceedings and vacate the trial setting, and (2) to grant such motions.

Cologne, J., and Staniforth, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied June 1, 1978.

---

[6]Delaying enforcement of a foreign judgment entitled to full faith and credit pending appeal in the rendering state is not inconsistent with Probate Code section 362. Although that section requires that the foreign decree "shall be admitted to probate and have the same force and effect as a will first admitted to probate in this state, and letters testamentary or of administration with the will annexed shall issue thereon to the petitioner" it does not require immediate enforcement of the foreign decree.

If the Utah decree is later reversed on appeal, such enforcement would not be appropriate for reasons explained in the text. If the Utah decree is later affirmed on appeal, William may then file a motion seeking to admit the Utah will to probate in California for ancillary administration.