[Civ. No. 68465. Second Dist., Div. Four. Sept. 22, 1983.]

UNITED BANK OF DENVER, Plaintiff and Respondent, v.
K AND W TRUCKING COMPANY, INC., et al.,
Defendants and Appellants.

**COUNSEL**

Baum & Cohen and Arthur Jarvis Cohen for Defendants and Appellants.

Danning, Gill, Gould, Joseph & Diamond and Marc Andrews for Plaintiff and Respondent.

**OPINION**

**SCHNEIDER, J.*—**

### FACTS

The facts in the instant case are not in dispute. K and W Trucking Company, Inc. and Robert E. Kerivan (hereinafter collectively appellants) appeal from two orders of the trial court; the grant of the motion of United Bank of Denver, National Association (hereinafter respondents) to vacate the stay of enforcement of a Colorado judgment, and the denial of a motion by appellants to vacate the entry of the Colorado judgment.

Appellants executed a note in favor of respondents on September 13, 1974. The note, among other things, was secured by personal property and a deed of trust on real property located in the State of California. The note provided that it be governed and construed in accordance with the laws of the State of Colorado. Appellants defaulted on the note. After exhausting the personal property securities, respondents requested the trustee (Title Insurance and Trust Company) to notice a default and election to sell. A nonjudicial foreclosure sale followed in due course. The proceeds following all sales did not discharge the full amount due on the note. Respondents brought suit in the State of Colorado, a jurisdiction allowing deficiency judgments. Following a trial in Colorado, respondents obtained a judgment

*Assigned by the Chairperson of the Judicial Council.

against appellants in the sum of $91,786.14 and an allowance of an additional $7,028.66 in attorney fees.

Subsequent to the Colorado judgment, respondents filed an application for entry of judgment on sister state judgment[1] in the Superior Court of Los Angeles County. A judgment in this state[2] was entered on May 18, 1981. Appellants pursued their appeal in Colorado and the trial court of this state granted a stay of enforcement[3] and denied the motion to vacate the sister state judgment without prejudice. All of the Colorado appeals were terminated and the judgment in favor of respondents became final on June 28, 1982, the date the Colorado Supreme Court denied a petition for certiorari. Thereafter, respondents brought a motion to vacate the stay of enforcement and appellants refiled their motion to vacate the entry of the sister state judgment. On August 25, 1982, the superior court of this state granted respondents' motion and denied appellants' motion. This appeal then followed.

### ISSUES RAISED ON APPEAL

Appellants argue as follows. First, the public policy of the State of California, as expressed in Code of Civil Procedure section 580d prevents this state from recognizing a Colorado judgment based upon a deficiency following a nonjudicial foreclosure sale. Second, respondents elected to avail themselves of California law when they proceeded to foreclose upon the real property located in this state under the procedures for a nonjudicial foreclosure sale of this state.

### DISCUSSION

### I

■ Code of Civil Procedure section 580d sets forth the public policy of this state. It provides that no judgment may be rendered for any deficiency on a note secured by a trust deed or mortgage, where the real property has been sold under a power of sale contained in the instrument. The "judgment" in Code of Civil Procedure section 580d must be distinguished from the application for judgment under Code of Civil Procedure section 1710.15. Code of Civil Procedure section 1710.10 et seq. set forth a com-

---

[1]Pursuant to California Code of Civil Procedure section 1710.15.

[2]California Code of Civil Procedure section 1710.25.

[3]California Code of Civil Procedure section 1710.50, subdivision (a) provides that enforcement shall be stayed until the proceedings on appeal have been concluded or the time for appeal has expired.

prehensive scheme of procedural and substantive laws for the enforcement, in this state, of a sister state judgment. They grant to a "judgment creditor"[4] the right to enforce a sister state judgment against a "judgment debtor" for a "monetary judgment" of a sister state. Upon the application in this state by a judgment creditor, the "clerk shall enter a judgment"[5] and notice thereof shall be served on the judgment debtor by the judgment creditor. This statutory scheme manifests a legislative intent that its use or applicability be predicated upon a judgment first obtained and rendered outside of this state. The judgment in this state, following the judgment of a sister state, is ministerial only, that is, an activity by the clerk of this court. The judgment referred to in Code of Civil Procedure section 580d is a judicial act which can only be performed by a judicial officer of this state. (*Brown v. Barham* (1966) 242 Cal.App.2d 696 [51 Cal.Rptr. 718].) Consequently, the public policy, as expressed in Code of Civil Procedure section 580d, does not refer, and is not applicable to the enforcement of a sister state judgment. Based upon the facts presented in this case, the relevant analysis to be made here is one under the "full faith and credit" clause of the United States Constitution, article IV, section 1.[6]

## II

We next turn to the principal issue herein, the obligation of the courts of this state to enforce a valid judgment of a sister state.

The most recent guideline on this issue is found in *Thomas v. Washington Gas Light Co.* (1980) 448 U.S. 261, 270 [65 L.Ed.2d 757, 766, 100 S.Ct. 2647]. A divided United States Supreme Court set forth the basic application of the law. ■ It stated: "It has long been the law that 'the judgment of a state court should have the same credit, validity, and effect in every other court in the United States, which it had in the state where it was pronounced.' [Citations.] This rule, if not compelled by the Full Faith and Credit Clause itself . . . is surely required by 28 U.S.C. § 1738 . . . . [T]hus, in effect, . . . a State is permitted to determine the extraterritorial effect of its judgments; but it may only do so indirectly, by prescribing the effect of its judgment within the State." As to the power to determine the effect of the forum's own law, the court stated: "To vest the power of determining the extraterritorial effect of a State's own laws and judgments

---

[4]Defined in Code of Civil Procedure section 1710.10.

[5]Code of Civil Procedure section 1710.25, subdivision (a).

[6]A sister state judgment may also be vacated on any ground that would be a defense to an action in California on a sister state judgment. (Code Civ. Proc., § 1710.40.) The Law Revision Commission comment to Code of Civil Procedure section 1710.40 provides for certain defenses, none of which are applicable here. The motion to vacate, therefore, was proper.

in the State itself risks the very kind of parochial entrenchment on the interests of other States that it was the purpose of the Full Faith and Credit Clause and other provisions of Art. IV of the Constitution to prevent. [Citation.]" (*Id.*, at p. 272 [65 L.Ed.2d at p. 767].) The rare exceptions to the application of the full faith and credit clause arise only when there is a violation of some fundamental state public policy. ▮ As noted in *Magnolia Petroleum Co.* v. *Hunt* (1943) 320 U.S. 430 [88 L.Ed. 149, 64 S.Ct. 208, 150 A.L.R. 413], there is no precedent for an exception in the case of a money judgment in a civil suit. The permissible scope of inquiry in this state is limited to the ascertainment of jurisdiction over the person and subject matter. (*Durfee* v. *Duke* (1963) 375 U.S. 106 [11 L.Ed.2d 186, 84 S.Ct. 242].) California courts have applied this principle. In *Thorley* v. *Superior Court* (1978) 78 Cal.App.3d 900, 907 [144 Cal.Rptr. 557], the court held: "Upon a claim that a foreign judgment is not entitled to full faith and credit, inquiry into the legality of proceedings in a court of a sister state is narrowly circumscribed by case law. The permissible scope of inquiry upon such a party is limited to whether the court of rendition has 'fundamental' jurisdiction [citation]." Public policy dictates that multiplicity of suits, absent jurisdictional deficiencies or fraud, is to be severely limited.

In *Sanpietro* v. *Collins* (1967) 250 Cal.App.2d 203, 207 [58 Cal.Rptr. 219],[7] a case dealing both with the full faith and credit clause and deficiency judgments, the court affirmed a summary judgment based upon a final judgment in Arizona and stated as follows: "With this background, the appealing defendants contend that the Arizona judgment did not afford a basis for the summary judgment in California. They insist, for one thing, that the Arizona judgment runs afoul of the California policy embodied in section 580b of our Code of Civil Procedure, which forbids a deficiency judgment after a sale of real property where the purchaser has failed to carry out his contract of purchase. Without examining the facts closely to see whether or not the premise of the contention is good and the Arizona judgment recognized an obligation that our policy condemns, the contention runs afoul of the rule thus stated in Restatement, Conflict of Laws, section 446, as quoted in *Harrah* v. *Craig* (1952) 113 Cal.App.2d 67, 69 [247 P.2d 855, 856]: ' "The Constitution of the United States requires a State . . . to enforce a valid judgment for the payment of money . . . if it was rendered in another State . . . although it would have been contrary to the public policy of the forum to allow action on the original claim." ' See also statement in *Biewend* v. *Biewend* (1941) 17 Cal.2d 108, 111-112 [109 P.2d 701, 704, 132 A.L.R. 1264]: 'It is well settled that once a valid judgment has been ren-

---

[7]This case was brought prior to the enactment of the Sister State and Foreign Money Judgment Act of 1974.

dered it must be accorded full faith and credit by every other court within the United States even though the cause of action upon which the judgment was based is against the law and public policy of the state in which enforcement is sought.' "

Similarly, a Nevada final judgment alleged to arise out of gambling debt in that state was enforced in this state. In *Harrah* v. *Craig* (1952) 113 Cal.App.2d 67, 69 [247 P.2d 855], the court relying on the Restatement, Conflict of Laws, section 446 stated: " 'The Constitution of the United States requires a State of the United States to enforce a valid judgment for the payment of money . . . if it was rendered in another State of the United States, although it would have been contrary to the public policy of the forum to allow action on the original claim.' " Furthermore, the court held that a sister state judgment is conclusive ". . . even though based upon a mistake of law . . . ."

■ A deficiency judgment is permissible in this state, but limited in two ways. First, there can be no deficiency when the trustee sells the real property under a power of sale contained in the mortgage or deed of trust. (Code Civ. Proc., § 580d.) Second, as a general rule, there can be no deficiency judgment on foreclosure of a purchase-money mortgage or trust deed. (Code Civ. Proc., § 580b.) In all other situations, the judgment creditor may have a deficiency judgment. This state's public policy, as expressed in Code of Civil Procedure section 580d is, by no means, pervasive. ■ Deficiency judgments are only statutorily limited and are not inherently objectionable, as such judgments are not a threat to the moral or ethical standards of the citizens of this state. We, therefore, conclude that a deficiency judgment in a sister state is not so offensive so as to compel this court to recognize an exception to the full faith and credit clause of the United States Constitution.

### III

We now turn to the final issue raised in this appeal. Appellants argue that respondents' notice of default and election to sell under a deed of trust and the subsequent nonjudicial foreclosure in this state, are tantamount to an express election on respondents' part to avail itself of California law. No applicable authority was called to our attention by the appellants and we find none. The cases cited by appellants deal with concurrent actions or remedies based upon the same set of facts. No binding choice of law was apparent in any of the cases. On the contrary, Restatement Second of Conflict of Laws, section 229, makes the distinction which escapes appellants. Comments (a) and (e) to this restatement section are most pertinent.

"a. *Method of foreclosure.* The courts of the situs would apply their own local law to determine the method of foreclosure, such as whether the mortgage may be foreclosed by sale without a judicial proceeding, whether upon a judicial foreclosure a sale of the mortgaged land is necessary or whether strict foreclosure is permissible.

"e. *Issues collateral to foreclosure.* The courts of the situs would apply their own local law to determine questions involving the foreclosure which affect interests in the land. Issues which do not affect any interest in the land, although they do relate to the foreclosure, are determined, on the other hand, by the law which governs the debt for which the mortgage was given. Examples of such latter issues are the mortgagee's right to hold the mortgagor liable for any deficiency remaining after foreclosure or to bring suit upon the underlying debt without having first proceeded against the mortgaged land. . . ."

Consistent with this Restatement section, a number of cases outside of this state held that a foreign antideficiency statute at the situs of the mortgaged property would not protect the mortgagee against an in personam deficiency action in the forum. The basis of these decisions was to the effect that a foreign statute does not extinguish the permissible deficiency, but merely limits the remedy. The remedial measure in one state would not prevent a recovery of the deficiency in another state. (*Martin* v. *Midgett* (1966) 100 Ariz. 284 [413 P.2d 754]; *Bayside-Flushing Gardens* v. *Beuermann* (D.D.C. 1941) 36 F.Supp. 706.)

The judgment is affirmed.

Kingsley, Acting P. J., and McClosky, J., concurred.