FERNANDEZ, Circuit Judge:
Robinson Ranchería Citizens Council (Robinson) appeals from the district court’s dismissal of its claims for injunctive and declaratory relief under 25 U.S.C. § 81, which governs contracts between Indians and non-Indians relating to tribal lands. The district court dismissed Robinson’s complaint with prejudice, and when Robinson moved for reconsideration of the court’s order, the court imposed sanctions under Rule 11. Since a state court has now decided the claims Robins on placed before the district court, we affirm the district court’s dismissal of the action. We reverse the district court’s order imposing sanctions.
BACKGROUND
On August 30, 1986, Robinson, a federally recognized Indian tribe, and Borneo, Inc. entered into a written contract which obligated Borneo to finance, construct, and operate a bingo hall on Robinson’s tribal land. Legal title to tribal land is held in trust for Robinson by the United States. The agreement provided that Borneo was to receive eighty percent of net operating profits until its construction costs had been paid in full; after costs were recouped, Borneo’s draw was to fall to forty percent. Revenues not paid to Borneo were to be retained by Robinson. The contract also provided that Borneo’s rights and responsibilities would be assigned to Borneo, Inc. as general partner for Clear Lake Indian Bingo (CLIB), a limited partnership to be formed for the purpose of financing the *247 construction of the bingo hall. At the time the contract was executed, CLIB had not been organized. One term of the contract stipulated that disputes arising under the contract were to be settled by the American Arbitration Association (AAA). The agreement was signed by Michael W. McCoy on behalf of Borneo and by Bernadine Tripp, tribal chairperson, for Robinson. A duly executed resolution of the Robinson Ranchería Citizens Business Council authorized Tripp to sign the contract on Robinson’s behalf. That resolution recited the fact that Robinson had already approved the contract. The Business Council, in turn, was empowered by the federally approved “Constitution of the Robinson Ranchería” to enter into binding agreements affecting tribal lands on behalf of Robinson.
Since the Robinson-Borneo contract was an agreement between an Indian tribe and non-Indians “in consideration of services for said Indians relative to their lands,” it had to meet the formal requirements of 25 U.S.C. § 81 to be valid. Section 81 requires that agreements (1) be in writing, with a duplicate delivered to each party, (2) bear the approval of the Secretary of the Interior, or his representative, (3) contain the names, residential addresses and occupations of all “parties in interest,” i.e, the principals of the development companies, (4) state the time and place of execution, and (5) be of a specific, limited duration. Section 81 further states that “[a]ll contracts or agreements made in violation of this section shall be null and void....”
The Robinson-Borneo contract was approved by the Bureau of Indian Affairs on September 3,1986, as required by 25 U.S.C. § 81. However, the contract failed to meet the mandates of section 81 in a number of other respects. The names, address and occupations of the principals of Borneo and CLIB were not listed. Nor was the time and place of execution stated in the agreement. At oral argument before the district court, Robinson conceded that the other requirements of section 81 had been met.
Borneo and CLIB completed construction of the bingo hall in January, 1987. Borneo operated the hall from January 21, 1987 to April 13,1987. CLIB operated it from May 1, 1987 until December 16, 1987, at which time it closed the bingo hall for lack of operating capital. Robinson re-opened the hall April 16, 1988. Robinson claims that Borneo and CLIB breached the agreement by failing to pay state and federal employment taxes, county property tax, and certain construction debts. It also claims that CLIB unilaterally ceased bingo operations for a few months, causing Robinson to seek and secure new management. CLIB claims Robinson wrongfully seized control of and denied CLIB access to the bingo hall.
Pursuant to the terms of the agreement, CLIB submitted the dispute to an arbitrator for the AAA. However, the AAA arbitrated the dispute without substantial participation by Robinson. In a letter to the arbitration judge, Robinson appeared specially to argue that the AAA lacked authority to resolve the dispute because Robinson was immune from unconsented suits and Robinson’s governing body lacked authority to waive sovereign immunity on Robinson’s behalf. The arbitration judge scheduled the jurisdiction hearing for the day after the commencement of the hearing on the merits of CLIB’s claims. He instructed Robinson’s attorney to come prepared to raise the jurisdictional question and to argue Robinson’s case on the merits. Robinson failed to attend this hearing or the hearing on the merits.
After the hearing, the arbitration judge found in favor of CLIB. CLIB then filed an action in state court to confirm the arbitration judge’s findings and award. On April 10, 1989, Robinson appeared specially and contested the jurisdiction of the state court, but the state court decided CLIB’s claim was properly before it.
While the action was pending in state court, Robinson pursued two other lines of attack against the AAA award. It first filed this action in the District Court for the Northern District of California. On May 1, 1989, the Northern District issued its order denying Robinson’s application for a temporary restraining order and dis *248 missed this case with prejudice. Robinson then moved the court to reconsider the dismissal. On June 19, 1989, the court denied the motion and awarded Borneo monetary sanctions against Robinson for bringing a frivolous motion. Robinson filed this appeal on July 13, 1989.
In the meantime, Robinson had removed the state confirmation action to the District Court for the Central District of California. On July 24, 1989, the Central District remanded that case to the state court. The state court then confirmed the arbitration judge’s award and findings on December 27, 1990, and issued a judgment enforcing the award. That judgment was not appealed and is now final.
JURISDICTION AND STANDARD OF REVIEW
The district court had jurisdiction under 25 U.S.C. § 81 and 28 U.S.C. § 1331. We have jurisdiction to review final orders and judgments under 28 U.S.C. § 1291.
We review de novo the district court’s order dismissing Robinson’s complaint. See A.K. Management Co. v. San Manuel Band of Mission Indians, 789 F.2d 785, 787 (9th Cir.1986). However, our review is not limited to a consideration of the grounds upon which the district court decided the issues; we can affirm the district court on any grounds supported by the record. Jewel Cos., Inc. v. Pay Less Drug Stores Northwest, Inc., 741 F.2d 1555, 1564-65 (9th Cir.1984).
We review the district court’s order imposing sanctions under Rule 11 for an abuse of discretion. United States v. Stringfellow, 911 F.2d 225, 226 (9th Cir. 1990).
DISCUSSION
Our review of this case begins and ends with the fact that Robinson’s claims have been raised before and decided by a California state court. Thus, we need not and do not resolve the weighty issues regarding the validity of the Robinson-Borneo contract,[1] although we will of necessity refer to them in our discussion.
I. JUDICIAL NOTICE OF THE STATE COURT JUDGMENT
Generally, we will not consider facts outside the record developed before the district court. Daly-Murphy v. Winston, 837 F.2d 348, 351 (9th Cir.1987). However, we “may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.” St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir.1979); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989); E.I. DuPont de Nemours & Co., Inc. v. Cullen, 791 F.2d 5, 7 (1st Cir.1986); Coney v. Smith, 738 F.2d 1199, 1200 (11th Cir.1984); Green v. Warden, 699 F.2d 364, 369 (7th Cir.), cert. denied, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); Bryant v. Carleson, 444 F.2d 353, 357 (9th Cir.) (court took judicial notice of proceedings and filings in other courts, including a decision of the California Supreme Court issued while the parties’ appeal in the federal case was pending), cert. denied, 404 U.S. 967, 92 S.Ct. 344, 30 L.Ed.2d 287 (1971).
The proceedings before the California Superior Court are “directly related” to this appeal and may in fact be dispositive. Accordingly, we take notice of that court’s final judgment, Clear Lake Indian Bingo Ltd. v. Robinson Rancheria Citizens Council, No. C 718613, (California Superior Court, December 28, 1990), and related filings.
II. THE EFFECT OF THE STATE COURT JUDGMENT
The state court judgment confirmed the AAA award in all respects. Thus, the findings and conclusions of the arbitrator have the same force and effect as a decision reached by the court itself at the close of a fully litigated civil action. See Cal.Civ. Proc.Code § 1287.4.
*249 The arbitrator found that the AAA had jurisdiction over both Robinson and the claim and that the agreement between Borneo and Robinson was enforceable according to its terms. He specifically found that Robinson had waived its sovereign immunity and that the agreement satisfied the requirements of 25 U.S.C. § 81. In addition to incorporating these findings into its judgment, the state court also found that it had jurisdiction to entertain Borneo’s confirmation petition even though it was brought against a federally recognized Indian tribe. The court made those determinations after Robinson appeared specially to contest the court’s jurisdiction to confirm the award. Robinson did not appeal the state court’s judgment, and the time for appeal has now long since run. Thus, the state court judgment confirming the arbitrator’s award is final.
Robinson’s limited appearances before the arbitrator and the California Superior Court, together with its failure to appeal from the judgment of that court, have created a difficult procedural tangle. Robinson’s half measures have placed it in a posture where it must convince us to ignore the effect of the California judgment. We must therefore determine: (1) whether there is a congruence of parties sufficient to require the application of the doctrine of res judicata; (2) whether the California judgment can be ignored if the court lacked subject matter jurisdiction; and (3) whether California itself would deny res judicata effect to the judgment if the Robinson-Borneo contract was void for failure to comply with the provisions of 28 U.S.C. § 81. We answer the first question in the affirmative and the latter two in the negative. We therefore affirm the district court’s dismissal of this action.
A. Congruence of Parties
Robinson argues that the state court judgment should not be given res judicata effect because the parties and issues before that court are not identical to those before this court. See Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (application of doctrine of res judicata requires identity of issues and parties). Specifically, Robinson notes that the United States is a party to this federal action but was not named in the state proceedings. This, however, misconstrues the procedures for bringing a suit in federal court under 25 U.S.C. § 81. Section 81 authorizes an Indian tribe to bring a suit “in the name of the United States,” much like a Miller Act party brings suit “in the name of the United States for the use of the person suing.” Compare 25 U.S.C. § 81 with 40 U.S.C. § 270b(b). In neither instance is the United States a party to the action. Moreover, the naming of additional parties does not eliminate the res judicata effect of a prior judgment “so long as the judgment was rendered on the merits, the cause of action was the same and the party against whom the doctrine is asserted was a party to the former litigation.” Dreyfus v. First Nat'l Bank of Chicago, 424 F.2d 1171, 1175 (7th Cir.), cert. denied, 400 U.S. 832, 91 S.Ct. 64, 27 L.Ed.2d 63 (1970). Finally, Robinson’s sole claims in the federal action — that the contract was void because it failed to conform to the requirements of section 81 and that Robinson enjoyed sovereign immunity — were expressly decided by the arbitrator and confirmed by the state court. There is a sufficient identity of parties and issues to apply the doctrine of res judicata.
B. State Court Jurisdiction
The next question that must be addressed is whether this court is required to récognize the state court’s final judgment. As we have already pointed out, that question encompasses two issues, one involving jurisdiction and the other involving the merits. In this portion of the opinion we will set forth some general principles and address the former issue. In the next portion we will address the latter issue.
Robinson' asserts that pursuant to Public Law 280 the California Superior Court could not take jurisdiction over Borneo’s action for confirmation of the arbitrator’s award. Thus, it says, we should not recognize the judgment. See 28 U.S.C. § 1360(b) (state court not granted jurisdic *250 tion to adjudicate ownership or right to possession of Indian trust lands). That is an oversimplification. The preclusive effect accorded a state court judgment in a subsequent federal court proceeding is determined by reference to the laws of the rendering state. 28 U.S.C. § 1738; Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331-32, 84 L.Ed.2d 274 (1985). We will recognize the state court judgment if the California courts would do so. But would they? To answer that question we must review California law.
In general, California courts accord res judicata effect to judgments of “a court or judge of this state, or of the United States, having jurisdiction to pronounce the judgment or order_” Cal.Civ.Proc.Code § 1908. Jurisdiction obtains whenever “the state of rendition had jurisdiction over the parties and the subject matter and all interested parties were given reasonable notice and an opportunity to be heard.” Thorley v. Superior Court, 78 Cal.App.3d 900, 907, 144 Cal.Rptr. 557, 562 (1978). However, a judgment of a court lacking “jurisdiction to pronounce the judgment” is generally subject to collateral attack. See Silbrico Corp. v. Raanan, 170 Cal.App.3d 202, 208, 216 Cal.Rptr. 201, 205 (1985) (“[Jjudgment of a sister state must be recognized in a California court if that sister state had jurisdiction over the parties and the subject matter and all interested parties were given reasonable notice and opportunity to be heard.”); World Wide Imports, Inc. v. Bartel, 145 Cal.App.3d 1006, 1009, 193 Cal.Rptr. 830, 832 (1983) (same); Aldabe v. Aldabe, 209 Cal.App.2d 453, 471, 26 Cal.Rptr. 208, 218-19 (1962) (California court declined to give res judicata effect to Nevada decree where Nevada court lacked subject matter jurisdiction). Since this is the general rule in California, it appears on the surface that we should decline to give res judicata effect to the state court judgment if we determine that the state court lacked jurisdiction to hear the action.
That initial appearance fades once we penetrate the surface because there is a major exception to that general requirement of jurisdictional competency. Even if a foreign court lacked jurisdiction to pronounce a judgment, a party will be barred from collaterally attacking a judgment entered by that court if the party appeared there, contested jurisdiction, and lost. Durfee v. Duke, 375 U.S. 106, 111-12, 84 S.Ct. 242, 245, 11 L.Ed.2d 186 (1963). If the foreign court decided that it had jurisdiction to hear a claim, that determination itself is res judicata. Id. In Durfee v. Duke, a case involving subject matter jurisdiction, the Court referred to a number of its earlier cases and then said:
In each of these cases the claim was made that a court, when asked to enforce the judgment of another forum, was free to retry the question of that forum’s jurisdiction over the subject matter. In each case this Court held that since the question of subject-matter jurisdiction had been fully litigated in the original forum, the issue could not be retried in a subsequent action between the parties.
Id. at 112, 84 S.Ct. at 246. The Court then explained the powerful policies behind the rule as follows:
We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation.... Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation. After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first.
Id. at 113-14, 84 S.Ct. at 246 (quoting Stoll v. Gottlieb, 305 U.S. 165, 172, 59 S.Ct. 134, 138, 83 L.Ed. 104 (1938)). Thus, there can *251 be little doubt that jurisdictional determinations, like others, are final.
California has expressly embraced the Durfee v. Duke rule and incorporated it into California claim preclusion jurisprudence. As the court said in St. Sava Mission Corp. v. Serbian E. Orthodox Diocese, 223 Cal.App.3d 1354, 1364, 273 Cal. Rptr. 340, 346 (1990) (citations omitted), cert, denied, — U.S.-, 111 S.Ct. 1624, 113 L.Ed.2d 721 (1991):
Where another state has fully and fairly litigated its jurisdiction, and has finally decided the question, a second state may not re-examine the question but must give the judgment of the first state full faith and credit. (Durfee v. Duke, ...) However, where the first state has not litigated and decided the question, “ ‘the jurisdiction of a court rendering a judgment is open to inquiry under proper averments, when questioned in the court of another state_
The principle is well established in California and was even before Durfee v. Duke was decided. See Sanpietro v. Collins, 250 Cal.App.2d 203, 208, 58 Cal.Rptr. 219, 223 (1967) (“If the court of the sister.state which rendered the decree has expressly litigated the question of jurisdiction, that determination is res judicata and is itself protected by the full faith and credit clause. The question may not be relit-igated in this state.”) (quoting Lewis v. Linder, 217 Cal.App.2d 150, 151-152, 31 CaLRptr. 563, 564 (1963) and Perkins v. Benguet Consol. Mining Co., 55 Cal. App.2d 720, 132 P.2d 70 (1942), cert, denied, 319 U.S. 774, 63 S.Ct. 1435, 87 L.Ed. 1721 (1943)). We have no reason to think that California would treat the decisions of its own courts with less respect than that accorded to the decisions of the courts of all other jurisdictions.
In this case, Robinson appeared specially to contest the jurisdiction of the California Superior Court. Robinson argued that Public Law 280 expressly prohibited the state court from exercising jurisdiction. After a hearing on the jurisdictional issue, the state court ruled that it had jurisdiction. The question of subject matter jurisdiction has been fully and fairly litigated by the California trial court. That ruling was not appealed. Thus, the issue has been finally decided. Under California claim preclusion law, this court must give “full faith and credit” to that determination. See 28 U.S.C. § 1738; Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481-82, 102 S.Ct. 1883, 1897-98, 72 L.Ed.2d 262 (1982); St. Sava Mission Corp., 223 Cal.App.3d at 1364, 273 Cal.Rptr. at 346.
In fine, the. state court’s determination that it had jurisdiction is res judicata.
C. The Void Contract Issue
Despite the fact that we may not revisit the jurisdictional issue, we must consider whether we may decline to recognize the judgment if it is based upon a void contract where the illegality of that contract appears on the face of the judgment roll.[2]
California permits an attack upon a judgment based upon an illegal contract if that contract is made part of the judgment roll and if further judicial action is about to be taken to enforce the terms of the contract. In Hunter v. Superior Court, 36 Cal.App.2d 100, 97 P.2d 492 (1939), a party to a consent decree petitioned the Court of Appeal to issue a writ of prohibition enjoining the Superior Court from enforcing the decree. The party argued that the stipulated judgment was void because it was a restraint of trade in violation of Cal.Civil Code § 1673. Id. at 112-113, 97 P.2d at 499. The California Court of Appeal held that although a consent judgment was not subject to direct appeal, the party could collaterally attack the judgment because it was “void upon its face” insofar as it purported to “restrain the petitioner herein from exercising a lawful profession, trade, or business.” Id. at 115-16, 97 P.2d at 500. The Hunter court further stated that the attack could be *252 countenanced because the consent decree constituted a part of the “judgment roll.” The court explained that where a contract is void “[tjhere is nothing which the parties to the action could do which would in any way add to its validity. If the contracts upon which the judgment is based are to that extent void, they cannot be ratified either by right, by conduct or by stipulated judgment.” Id. at 113, 97 P.2d at 499. Thus, the court said, the judgment itself must be void to that extent. However, Hunter must be read with some caution.
The attack by means of a writ of prohibition, the type of attack used in Hunter, is quite limited. For example, in City of San Diego v. Superior Court, 36 Cal.2d 483, 224 P.2d 685 (1950), the court carefully distinguished between using a writ of prohibition to upset completed judicial action and using a writ for the purpose of precluding further judicial action. As it said:
Respondents contend, however, that even if the order of 1950 is void, it is a completed judicial act and therefore prohibition will not lie to review its validity. The writ is not sought, however, to review that order but to prevent the trial court from proceeding to trial upon all issues despite the express limitation in the original order that one of the main issues was settled and was not to be further litigated. Since it is further judicial action based upon a void order that petitioner seeks to restrain, prohibition is a proper remedy.
Id. at 487-88, 224 P.2d at 687-88 (citations omitted).
In other words, California will not allow the review of completed judicial action by means of a writ of prohibition. See Big Jim Mines, Inc. v. Superior Court, 9 Cal.2d 503, 71 P.2d 67 (1937). However, California may well preclude a court from taking further action to enforce a judgment, and may thus limit the judgment’s ultimate effect. Of course, that can be looked upon as a kind of collateral attack. As the California Supreme Court has pointed out:
Proceedings to prohibit or annul judgments of contempt for violation of injunctions and other equitable orders made contrary to statute may constitute another exception to the general rule. The decisions do not use the term, but the attack in such cases might be considered to be collateral, and the proceedings apparently fall in a special category because they are penal in nature.
From the foregoing discussion it follows that, even if we assume that the rehabilitation agreement and the order approving it authorized mutualization of the new company under the wrong statutes, the order is nevertheless res judica-ta.
Pacific Mut. Life Ins. Co. v. McConnell, 44 Cal.2d 715, 727-28, 285 P.2d 636, 642 (1955) (citations omitted), cert, denied, 350 U.S. 984, 76 S.Ct. 472, 100 L.Ed. 851 (1956).
What Pacific Mutual hinted at, the California Supreme Court has now made explicit. It has declared that the mere availability of a voidness attack in some instances will not upset the normal rules of res judicata in others. Even if a judgment could be called void when subjected to review on direct appeal or by writ, it can have res judicata effect when other forms of collateral attack are attempted. Moffat v. Moffat, 27 Cal.3d 645, 654-56, 612 P.2d 967, 972-74, 165 Cal.Rptr. 877, 882-84 (1980). As that court remarked, “void” has a protean quality and must be treated with care. Id. at 656 n. 7, 612 P.2d at 973 n. 7, 165 Cal.Rptr. at 883 n. 7.
Certainly, as Moffat indicated, if a party were able to show a lack of fundamental jurisdiction in the issuing court, a collateral attack might be permitted. Id. at 655-57, 612 P.2d at 972-73,165 Cal.Rptr. at 882-83. But, as we have already explained, that particular avenue of relief is not available to Robinson in any event, since the jurisdictional determination has itself become res judicata.
Perhaps it is not amiss to observe that the California courts would probably view Robinson’s desire to collaterally attack the superior court’s order with little favor. As the California Supreme Court said with regard to the attacking party in the Moffat case:
*253 Mrs. Moffat had full opportunity to contest the propriety of the order at the time of the contempt hearing or, in the alternative, to seek review by an extraordinary writ. “[T]here is almost a presumption of negligence on the part of the aggrieved party who fails to seek these normal remedies and later raises the objection by collateral attack.” Indeed, her failure over the years to seek normal available remedies may be viewed as encouraging Mr. Moffat to rely on the validity of the order.
Moffat, 27 Cal.3d at 657-58, 612 P.2d at 974, 165 Cal.Rptr. at 884 (citation omitted).
We would only add that if a judgment were truly entirely void we would expect to find California courts setting it aside and, indeed, undoing it and all of its effects. We see no indication that California would do any such thing. Quite the contrary. In Moffat, the order in question violated a strong public policy established by the legislature and would have been found void on direct review or in an appropriate writ proceeding. Nevertheless, it was res judicata and was not subject to collateral attack. 27 Cal.3d at 654-56, 612 P.2d at 972-73, 165 Cal.Rptr. at 882-83.
Thus, Robinson cannot avoid the effect of this judgment of the California courts by simply asking us to deem it void and of no force whatever. However, we must address two pragmatic objections before we leave this issue.
It might be argued that a judgment which will not support later enforcement action has no real value. Perhaps not, if and when that action becomes necessary. In the meantime the judgment validates what has gone before and precludes the spectacle of an attempt to undo what has been done. True, as the California Supreme Court pointed out in Pacific Mutual, 44 Cal.2d at 727, 285 P.2d at 642, the judgment cannot support a contempt action, but there is more to judgments than that. People do simply obey judgments. In fact, void or not, Robinson has, for all we know, obeyed the California judgment until now.
It might also be thought that if Robinson were to act in a manner that caused Borneo to seek enforcement, we could then declare the judgment void ourselves, and so we might as well do that forthwith. We think not.
First of all, enforcement would have to be sought from the California courts, and they could then consider Robinson’s various arguments.
Second, even if enforcement were sought it would be exceedingly disruptive were we to step in. As the Supreme Court has insisted, we should not interfere with state court proceedings. That is even so where the effect of those proceedings might be disastrous for one of the parties. See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). By the same token, we cannot conduct a review of state court judgments. See Allah v. Superior Court, 871 F.2d 887, 890-91 (9th Cir.1989) (no authority, even if claim is that the federal constitution was violated); MacKay v. Pfeil, 827 F.2d 540, 543 (9th Cir.1987) (no authority, even if claim is that the state judgment is void for lack of jurisdiction); Worldwide Church of God v. McNair, 805 F.2d 888, 890-91 (9th Cir.1986) (no authority, even if claim is that the federal constitution was violated). Yet that is precisely what Robinson would have us do. It simply disagrees with the result reached by the California Superior Court. Instead of taking advantage of the obvious opportunity to seek state appellate review of that judgment, Robinson has tried to take its appeal to the federal courts. It cannot.
Nor can Robinson deflect the force of this reasoning by declaring that it does not ask for review, but only asks that we ignore the state court judgment. We could hardly ignore that judgment without first reviewing it and deciding that it was invalid. And were we to ignore it without overturning it, we might create an even more unpleasant spectacle. The state court judgment would still authorize Borneo to possess and operate the bingo hall and would still preclude Robinson from interfering. On the other hand, should we find *254 the contract void, we would authorize the tribe to possess and operate the bingo hall and would preclude Borneo from interfering. That is exactly the kind of state-federal conflict that our many prudential doctrines — res judicata and abstention among them — were designed to avoid.
Thus, while we are not prepared to say that the result we have reached is apodictic, were we driven to the opposite conclusion we would embrace it with velleity. Robinson chose to proceed as it has; Robinson must extricate itself, if it can, by repairing to the state courts.
III. ORDER FOR SANCTIONS
The district court imposed sanctions of $1,383 against Robinson for bringing the motion to reconsider the order of dismissal. The court found Robinson’s case to be “absolutely outrageous [and] meritless,” and thus found Robinson’s motion to reconsider to be frivolous. Accordingly, it imposed sanctions under Fed. R.Civ.P. 11.
As the foregoing discussion amply demonstrates, Robinson’s claims were not frivolous. “[T]he central purpose of Rule 11 is to deter baseless filings_ Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and ‘not interposed for some improper purpose.’ ” Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). Robinson’s claim was certainly legally tenable— not all of the requirements of section 81 had been met, and the section expressly states that contracts in violation of the section are “null and void.” Surely that at least cast doubt upon the legality of the contract, including its arbitration clause. Moreover, we cannot overlook the fact that the district court invited Robinson to file a motion to reconsider when it first dismissed the claims. Although the motion to reconsider presented no new arguments, Robinson’s arguments did not become frivolous merely because the district court had heard them before.
Although our review of all aspects of the district court’s Rule 11 determination is quite deferential, Cooter & Gell, 110 S.Ct. at 2460-61, we must reverse the district court if “it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.” Id. at 2461. We find the district court’s view about the clarity of the law to have been erroneous. Thus its imposition of sanctions was an abuse of discretion.
CONCLUSION
Robinson signed a contract with Borneo, but now seeks to escape that contract’s strictures. Despite the highly technical nature of Robinson’s attack, we do not decide that the attack is intrinsically faulty and would be otiose were it part of the first skirmish. What we do decide is that this skirmish comes after Robinson unaccountably engaged in others, but failed to follow through. It has already lost so much ground and has so weakened its position that it cannot succeed, regardless of the inventiveness of its current tactics.
Robinson entered the fray in the California court system and those courts have decided both that they have jurisdiction and that the contract can and must be enforced against Robinson. That determination is res judicata. While we can survey the field of battle from our promontory and can even ruminate about sorties that the contestants could now mount, we cannot swoop down and rearrange what we see.
We, thus, affirm the district court’s dismissal of Robinson’s action, with the caveat that should the state judgment be overturned in a proper proceeding in the California courts, it goes almost without saying that the district court’s dismissal of Robinson’s action with prejudice will not itself have res judicata effect. That is because we affirm the district court only for the reasons stated in this opinion and not for the reasons stated by the district court in its ruling on the merits of Robinson’s underlying position. For that reason, also, we have determined that the award of sanctions against Robinson in this highly unusual and procedurally complex case was *255 an abuse of discretion, and we reverse that award.
AFFIRMED as to the dismissal. REVERSED as to the sanctions. The parties shall bear their own costs on appeal.

. As can be seen from the Background portion of this opinion, the contract did not literally comply with all of the provisions of 25 U.S.C. § 81.

. The judgment roll is all pleadings, orders and verdicts in a case and, presumably, any exhibits attached thereto. See Cal.Civ.Proc.Code § 670.