GEORGE W.; George W. as the Representative of the Class of People Who Defaulted on a Federal Guaranteed Student Loan, Who Were Entitled to Loan Rehabilitation, Who Were Not Sued for Collection and Who Were Charged the Collection Costs of 18.5% of the Balance of the Loan By Texas Guaranteed Student Loan Corporation, Plaintiffs,

v.

THE UNITED STATES DEPARTMENT OF EDUCATION; Texas Guaranteed Student Loan Corporation, Defendants.

No. CIV F 99–6812 OWW DLB.

United States District Court,
E.D. California.

Sept. 21, 2000.

Harry Ronald Sawl, Sawl, Smith and Assoc., Fresno, CA, for Plaintiff.

Linda Anderson, U.S. Attys. Office, Fresno, CA, Fred Marinucci, Office of Gen. Counsel, U.S. Dept. of Educ., Washington, DC, for U.S. Dept. of Education.

Jay Scott Alexander, Murphy, Austin, Adams, Schoenfeld, Sacramento, CA, for TX Guaranteed Student Loan Corp.

MEMORANDUM OPINION AND ORDER RE: (1) MOTION TO DISMISS CLAIMS AGAINST DEFENDANT [SECRETARY OF THE] U.S. DEPARTMENT OF EDUCATION (DOC. 37); (2) DEFENDANT TEXAS GUARANTEED STUDENT LOAN CORPORATION'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 48); and (3) PLAINTIFF GEORGE W. MOTION FOR PARTIAL DECLARATORY JUDGMENT ON THE PLEADINGS (DOC. 53)

WANGER, District Judge.

Before the court are (1) defendant [Secretary of the][1] United States Department

---

1. Defendant the Department of Education argues the Secretary of the Department of Education, rather than the Department itself, is the proper party. *See* Notice of Motion and Motion to Dismiss Claims Against [Secretary

of Education's ("Department") motion to dismiss, filed April 6, 2000; (2) defendant Texas Guaranteed Student Loan Corporation's ("TGSLC") motion for judgment on the pleadings, filed April 19, 2000; and (3) plaintiff George W. ("George W.") motion for partial declaratory judgment on the pleadings, filed May 1, 2000. TGSLC filed a request for judicial notice along with its motion. George W. filed his opposition to the Department's and TGSLC's motions May 15, 2000. The Department filed its opposition to George W.'s motion May 19, 2000, and TGSLC filed its opposition to George W.'s motion May 22, 2000. The Department replied May 26, 2000, TGSLC replied May 30, 2000, and George W. replied May 26, 2000.

## I. BACKGROUND

George W. sues the Department and TGSLC ("Defendants") for (1) violation of his Fifth Amendment due process rights (First Amended Complaint ("FAC"), ¶¶ 78–86); (2) violation of 34 C.F.R. § 682 .405(b)(1)(v), the "Right to Object to a Term of the Loan Rehabilitation Agreement" (FAC, ¶¶ 89–97); and (3) violation of 34 C.F.R. § 682.410(b)(5)(ii)(C) and (iv)(A), the "Right to Administrative Review to Determine Legality of Loan Obligation" (FAC, ¶¶ 100–107). George W., in essence, asserts Defendants denied him the right to a hearing to challenge collection costs imposed on him after he defaulted on his student loans, and argues this violates constitutional due process and Department of Education regulations. George W. seeks declaratory and injunc-

tive relief on all counts, $500 per Fifth Amendment violation against TGSLC (count one only), and reasonable attorney's fees and costs.

George W. attended Thomas M. Cooley Law School in Michigan from 1986 to 1989, and borrowed federally insured funds to do so. See FAC, ¶¶ 9, 10. On May 31, 1989, George W. consolidated his loans with the Federal Student Loan Marketing Association. See id., ¶ 11.

In December, 1989 George W. moved to California and notified his loan servicer of his new California address. See id., ¶¶ 12–13. George W.'s loans, as of March 1990, were guaranteed by the Michigan Higher Education Assistance Foundation. See id., ¶ 14. George W. moved to Florida in early 1991, but then moved back to California in November 1991. See id., ¶¶ 15–17. After both moves, George W. notified his loan servicer of his address. See id. ¶¶ 16, 18. In mid–1993, the Michigan Higher Education Assistance Foundation, George W.'s loan guarantor, ceased operations, and his loan was held by the Department of Education.[2] See id., ¶ 19. In September 1993, defendant TGSLC took assignment of George W.'s loan. See id., ¶ 20.

George W. defaulted on his student loans in 1996.[3] See FAC, ¶ 21. After his default, TGSLC "made negative references on George W.'s credit to national credit bureaus," and had its agent, Paul Harris of Zwicker and Associates, P.C., "contact[ ][him] via 'dunning letters' and phone calls." See id., ¶¶ 22–24. Mr. Harris told George W. he was attempting to collect on

of the] Department of Education ("DOE Mot."), p. i, n. 1.

**2.** The Department disputes it held Plaintiff's loan at any time. It admits it "facilitated transfer of HEAF's outstanding loan guarantees to other guaranty agencies, including TGSLC," but asserts "whether the Department transferred his loan guarantee from

HEAF to TGSLC, or his loan itself, as he alleges, is not material to the claims raised in Plaintiff's complaint." See Dept. Mot., p. 2 n. 2.

**3.** The Department asserts Plaintiff defaulted on or about January 23, 1995. See Dept. Mot., p. 2.

the student loan, and warned George W. if he did not pay his loan, his wages could be garnished and he could "intercept [George W.'s] IRS tax return." *See id.,* ¶¶ 26–27. Mr. Harris said George W.'s loan balance prior to default was $62,000, and his then-current balance after default was $73,500, which included a collection cost of 18.5% of the loan principal and interest. *See id.,* ¶¶ 28–29. Mr. Harris told George W. he could qualify for loan rehabilitation if he made monthly loan payments of $783.00 to TGSLC for a year. *See id.,* ¶ 30. Loan rehabilitation would, according to Mr. Harris, "restore all [George W.'s] federal rights, including clearing his credit and removing the risk of wage garnishment or IRS tax refund intercept." *See id.,* ¶ 31. George W. told Mr. Harris that he wanted loan rehabilitation, and was "trying to leave private practice and get a good paying job so he could afford the payment of $783 per month." *Id.,* ¶ 32.

On June 29, 1998, George W. was hired by the Fresno County District Attorney. *See id.,* ¶ 33. George W. contacted Mr. Harris in early July 1998 and told him his new salary enabled him to make the monthly payments of $783, and he wished to enter loan rehabilitation. *See id.,* ¶ 34. George W. made his first payment (for August 1998) as soon as he received his first paycheck, and has ever since made timely monthly payments, averaging $844.05 per month. *See id.,* ¶ 35.

From August 1998 to May 1999, George W. had telephone contacts with Mr. Harris during which he objected to the 18.5% collection cost as excessive "because the only collection activity taken against George W. were phone calls and letters." *See id.,* ¶ 36. Mr. Harris told George W. "there was nothing George W. could do about it." *Id.* On May 5, 1999, George W. sent a letter to TGSLC objecting to the 18.5% collection cost (approximately $12,000) as "grossly in excess of actual

collection costs." *Id.,* ¶ 37. George W.'s estimate of TGSLC's actual collection costs was $300. *Id.* Enclosed with the May 1999 letter was a "Confession of Judgment" in the amount of $60,226.36, "which considered [sic] the actual balance at that time, plus included $1,750 to more than cover the actual collection costs incurred." *Id.*

Kathleen Holden, corporate counsel for TGSLC, rejected George W.'s Confession of Judgment on June 7, 1999. *See id.,* ¶ 38. George W. states Ms. Holden told him TGSLC was "entitled to charge 'reasonable costs incurred', [sic] and such reasonable costs are at least 18.5% of the loan balance." *Id.*

By July 1999 George W. had made twelve timely monthly payments of at least $783.00 to TGSLC, and received a loan rehabilitation agreement from TGSLC. *See id.,* ¶ 40. The agreement required George W. to agree to pay the 18.5% collection cost. *See id.* George W. agreed to the proposed terms for loan rehabilitation but objected to the collection costs, and therefore did not sign the rehabilitation agreement. *See id.* George W. informed Mr. Harris of his reasons for not signing the rehabilitation agreement. *See id.*

In August 1999 George W. wrote to TGSLC and asserted "the law required [TGSLC] give him a hearing on the amount of collection costs." *See id.,* ¶ 41. Philip Cervin, TGSLC's Assistant Vice President of Collections, wrote George W. in September 1999 and explained George W.'s account with TGSLC was " 'currently in default, but [on] repayment status,' " that George W. was subject to wage garnishment and IRS refund intercept, and that his default status would continue to be reported to credit bureaus. *See id.,* ¶ 42. George W. in December 1999 again requested an "administrative hearing to determine the legality of the collection costs imposed against him individually, and as a

member of a class of debtors similarly situated to him." *See id.,* ¶ 43. Mr. Cervin responded George W. was not entitled to an administrative hearing, and told him only two situations entitled George W. to a hearing: if George W. wished to challenge administrative wage garnishment or if he wished to challenge a federal tax refund offset. *See id.,* ¶ 44.

George W. filed his initial complaint December 28, 1999. At that time his monthly bill from TGSLC was $890, and his loan balance was approximately $75,000. *See id.,* ¶ 47. TGSLC stopped billing George W. after he filed his complaint, but "still considers George W. in default and reports to the national credit bureaus on his account." *Id.* George W. does not dispute he owes approximately $58,000, and does not dispute the interest charged (9%) on the principal loan amount; he disputes only the 18.5% collection cost. *See id.,* ¶¶ 50–51.

## II. *JUDICIAL NOTICE*

■ TGSLC requests judicial notice be taken of the Department's "Motion to Dismiss Claims against Defendant [Secretary of the] Department of Education; Memorandum of Law," filed April 6, 2000. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(d). Often judicially noticed facts consist of matters of public record, such as prior court proceedings, *see, e.g., Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir.1988) or administrative materials, *see, e.g., Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir.1994). Federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir.1992).

The subject of TGSLC's request is the Department's motion to dismiss, also being decided by this memorandum opinion. TGSLC explains in its motion for judgment on the pleadings that the "facts and controlling law necessary to support TGSLC's present motion ... are *identical* to the facts and issues of law presented and discussed in the ... Department of Education's 12(b)(6) motion to dismiss." *See* Memorandum of Points and Authorities in Support of Motion for Judgment on the Pleadings (Doc. 49), p. 2 (emphasis in original). "As TGSLC's present motion ... is brought on the same grounds as [the Department's motion to dismiss], and to prevent burdening the Court with unnecessary and duplicative pleadings, defendant TGSLC incorporates by reference all papers filed with the Court in support of the motion to dismiss, and respectfully requests that the Court take judicial notice of the same." *Id.*

A motion is a legal brief, advancing a partisan position in litigation, not a judicially noticeable fact. Any facts contained within a motion may reasonably be subject to dispute, and therefore cannot be judicially noticed. TGSLC's request for judicial notice of the Department's motion is DENIED.

However, the goal of TGSLC's motion is that the Department's arguments in favor of dismissal be considered in support of TGSLC's motion for judgment on the pleadings. This request is reasonable, and the Department's arguments will be considered in support of TGSLC's motion for judgment on the pleadings as if TGSLC had advanced them.

## III. *LEGAL STANDARD*

### A. *DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject matter jurisdiction, derived from the case or controversy clause of Article III of the U.S. Constitution. Federal courts are limited in jurisdiction; it is presumed that a case lies outside the jurisdiction of the federal courts unless Plaintiff proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221 (9th Cir.1989); *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir.1979). "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Id.* at 733.

In a facial attack on the complaint, "the court must consider the allegations of the complaint as true." *Mortensen v. First Federal S & L Ass'n*, 549 F.2d 884, 891 (3rd Cir.1977); *see also, NL Indus. Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). The motion will be denied unless the allegations appear to be frivolous. *See Black v. Payne*, 591 F.2d 83, 86 n. 1 (9th Cir.), *cert. denied*, 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979).

A 12(b)(1) motion may "attack the existence of subject matter jurisdiction in fact, quite apart from any pleading," as a "speaking motion." *Mortensen*, 549 F.2d at 891; *Thornhill Publishing*, 594 F.2d at 733, *FDIC v. Nichols*, 885 F.2d 633, 635–36 (9th Cir.1989). Defendant may "rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.) (citations omitted), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989). "It

then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.*

> ... in a factual 12(b)(1) motion ..., *no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.*

*Mortensen*, 549 F.2d at 891 (emphasis added).

Although deference is given to a plaintiff's factual allegations in a 12(b)(6) motion, plaintiff's allegations need not be taken as true when considering a Rule 12(b)(1) motion. *Thornhill Publishing*, 594 F.2d at 733 ("no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims"). *See also Trentacosta v. Frontier Pacific Aircraft Industries*, 813 F.2d 1553, 1557–58 (9th Cir.1987).

### B. *DISMISSAL FOR INSUFFICIENCY OF PROCESS*

Fed.R.Civ.P. 4(b) requires a summons be issued for each defendant who is to be served the complaint. The summons must, *inter alia*, "be directed to the defendant." Fed.R.Civ.P. 4(a). "The court may allow a summons to be amended." *Id.*

"Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.1984). "Even if a summons fails to name all of the defendants ... dismissal

is generally not justified absent a showing of prejudice." *Id.; Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1404 (9th Cir. 1994); Fed.R.Civ.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). Substantial compliance with Rule 4 is required, however. *See Daly–Murphy v. Winston,* 837 F.2d 348, 355 (9th Cir.1987). Absent substantial compliance, actual notice will not provide personal jurisdiction. *Anunciation v. West Capital Financial Servs. Corp.,* 1996 WL 534049, at *2 (9th Cir.1996) (citing *Jackson v. Hayakawa,* 682 F.2d 1344, 1347 (9th Cir.1982)). "[A] technical defect in the form of the summons may still amount to substantial compliance with Rule 4." *Id.*

## C. *DISMISSAL FOR FAILURE TO STATE A CLAIM*

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is disfavored and rarely granted: "A dismissal for failure to state a claim is appropriate only where it appears, beyond a doubt, that the plaintiff can prove no set of facts that would entitled it to relief." *Morley v. Walker,* 175 F.3d 756, 759 (9th Cir.1999); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to [the] plaintiff." *Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1085 (9th Cir.1998).

A district court is not entirely limited to considering facts in the complaint. Facts subject to judicial notice may be considered on a motion to dismiss. *See Mullis v. United States Bankruptcy Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987). For example, matters of public record may be considered, including pleadings, orders, and other papers filed with the court or records of administrative bodies. *See Shaw v. Hahn,* 56 F.3d 1128, 1129 n. 1 (9th Cir.1995). Conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact in a complaint need not be accepted. *See Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981). Documents attached to the complaint are part of the complaint and may be considered on a motion to dismiss. *See Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987); *see also Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned.").

## D. *JUDGMENT ON THE PLEADINGS/DECLARATORY JUDGMENT ON THE PLEADINGS*

A Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings after the pleadings are closed. Judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1989). The court must assume the truthfulness of the material facts alleged in the complaint. All inferences reasonably drawn from these facts must be construed in favor of the responding party. *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir.1989), *cert. denied,* 493 U.S. 1079, 110 S.Ct. 1134, 107 L.Ed.2d 1039 (1990).

As with a motion to dismiss pursuant to Rule 12(b)(6), if matters outside of the pleadings are presented to and not excluded by the court on a motion for judgment on the pleadings, the motion shall be treated as one for summary judgment. Fed. R.Civ.P. 12(c). Nevertheless, a court may

take judicial notice of matters of public record, including "records and reports of administrative bodies" without converting the motion to one for summary judgment. *See Mack v. South Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986) (applying Rule 12(b)(6)).

A motion for declaratory judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) "may be granted 'where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'" *Meagher v. Compania Mexicana de Aviacion, S.A. de C.V.,* No. 90 CIV. 7464(LJF), 1992 WL 116429, at *2 (S.D.N.Y.1992) (quoting *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988)). "In considering the motion the Court is required to review the allegations presented in the pleadings and draw all inferences in a light most favorable to the non-moving party." *Meagher,* 1992 WL 116429, at *2. "All well-pleaded factual allegations in the non-movant's pleadings are accepted as true, while all controverting allegations in the movant's pleadings are assumed to be false." *Id.* (citing *Madonna v. U.S.,* 878 F.2d 62 (2d Cir.1989) and *Bloor v. Carro,* 754 F.2d 57 (2d Cir. 1985)).

## IV. *ANALYSIS*

All three movants seek judgment in their favor on all claims, based solely on the allegations in the pleadings. All three motions address the same fundamental issues: (1) whether TGSLC is government actor for purposes of Plaintiff's Fifth Amendment due process claim; (2) whether Plaintiff asserts a protectable property or liberty interest for purposes of the Fifth Amendment due process claim; and (3) whether Department of Education regulations give Plaintiff a private right of action. 20 U.S.C. § 1082(a)(2); *Parks Sch. of Business, Inc. v. Symington,* 51 F.3d 1480, 1484–85 (9th Cir.1995). The evidentiary

burden is on the moving party: all facts alleged by the non-moving party are deemed true and all reasonable inferences are drawn in the non-movant's favor.

## A. *CLASS STATUS*

There are class allegations purporting to assert this case is a class action. No certification has occurred nor has a motion to certify the class been presented by the Plaintiff. Under the provisions of Federal Rule of Civil Procedure 23(c) class members have not been identified, nor has the representativeness of the Plaintiff, Plaintiff's fitness to serve as a class representation, or fitness of Plaintiff's counsel, been established. Fed.R.Civ.P. 23(e) provides in relevant part that a class action shall not be dismissed without the approval of the court and notice of the proposed dismissal or compromise to all members of the class. *Diaz v. Trust Territory of the Pacific Islands,* 876 F.2d 1401, 1411 suggests that pre-certification notice to prospective class members is appropriate.

Where a defendant moves for summary judgment before a decision on class certification, "the Defendant ... assumed the risk that a judgment in their favor will not protect them from subsequent suits by other potential class members, for only the slender reed of stare decisis stands between them and the prospective onrush of litigants." *Schwarzschild v. Tse,* 69 F.3d 293, 296–97 (9th Cir.1995) (as amended). Notice serves no purpose when judgment is entered against a plaintiff before a class has been properly certified and notified, for it is binding only on the named Plaintiff. *Besinga v. United States,* 923 F.2d 133, 136 (9th Cir.1991). The parties have not addressed this issue in any meaningful way. The Plaintiff's claims are so unique that it is doubtful that other claimants would face statute of limitations issues that

could be affected by a ruling in this case, which only binds Plaintiff.

## B. *FIFTH AMENDMENT DUE PROCESS*

■ To state a claim for a due process violation under the Fifth Amendment, Plaintiff must plead and prove: (1) state action (2) which deprived him of a federal right or interest, and (3) this deprivation did not include constitutionally sufficient notice and an opportunity to be heard. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (requiring "conduct allegedly causing the deprivation of a federal right be fairly attributable to the State"); *American Mfrs. Mutual Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures.").

> [S]tate action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor."

*Sullivan,* 526 U.S. at 50, 119 S.Ct. 977. In other words, there must be action taken pursuant to state (or in this case, federal) law, and significant state involvement in that action. *See id.* at 50 n. 9, 119 S.Ct. 977. The " 'specific conduct of which the plaintiff complains' " must be examined. *Id.* at 51, 119 S.Ct. 977 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)).

■ That a private business is subject to state regulation does not by itself convert its action into that of the State. *See id.* at 52, 119 S.Ct. 977. There must be a " 'sufficiently close nexus between the State and the challenged action of the regulated entity so that the latter may be fairly treated as that of the State itself.' " *Id.* (quoting *Blum, supra,* 457 U.S. at 1004, 102 S.Ct. 2777); *see also Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (holding the alleged monopoly status granted an entity by the State insufficient to render the entity a state actor where there was "insufficient relationship between the challenged actions of the entities involved and their monopoly status."). "Whether such a 'close nexus' exists ... depends on whether the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.' " *Id.* "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Id.; see also Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 164, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) ("Our cases state 'that a State is responsible for the ... act of a private party when the State, by its law, has compelled the act.' [citation omitted] This Court, however, has never held that a State's mere acquiescence in a private action converts that action into that of the State.").

■ A private entity also becomes a state actor when it exercises "powers traditionally exclusively reserved to the State." *See Jackson,* 419 U.S. at 352, 95 S.Ct. 449. The public function must be exclusively reserved to the State, not merely traditionally performed by the State: "While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.' " *Flagg Bros.,* 436 U.S. at 158, 98 S.Ct. 1729. In this circuit, the test

is presented as, "is the action a function traditionally the exclusive prerogative of the State." *Parks Sch. of Business, Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995).

■ A private entity can become a state actor if "such a relationship exists between the State and the [entity] it regulates that the State may be considered a joint participant in the [challenged action]." *Blum*, 457 U.S. at 1010, 102 S.Ct. 2777; *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Put another way, when a private party is a willful participant in joint activity with the State or its agents to deprive a party of property without due process, the private party is a state actor. *See Lugar*, 457 U.S. at 941–42, 102 S.Ct. 2744.

■ Finally, when the state compels a private party to take a particular action, then that action is state action. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170–71, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

> "When the State has commanded a particular result, it has saved to itself the power to determine that result and thereby 'to a significant extent' has 'become involved in it.'" Moreover, there is much support in lower court opinions for the conclusion that discriminatory acts by private parties done under the compulsion of state law offend the Fourteenth Amendment.

*Id.* (quoting *Peterson v. City of Greenville*, 373 U.S. 244, 248, 83 S.Ct. 1119, 1121, 10 L.Ed.2d 323 (1963))

Due process protects against deprivations of protected interests in "property" or "liberty." *See* U.S. Const. amend. XIV. "[T]he range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth*, 408 U.S. 564,

570, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A person must have a legitimate claim of entitlement to the asserted property interest. *See id.* at 577, 92 S.Ct. 2701.

■ Due process requires notice and an opportunity to be heard, but it does not automatically require a formal hearing. *See Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'"). The appropriate amount of procedure is determined by three factors: (1) "the private interest that will be affected by official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335, 96 S.Ct. 893.

### 1. Is TGSLC a State Actor?

Defendants[4] assert TGSLC's actions here do not constitute governmental action because (1) TGSLC is not a governmental agency; (2) it does not perform a public function; (3) it does not guarantee or collect loans as an agent of the Secretary of the Department of Education, or by delegation of Department power; (4) TGSLC's possession of reserve fund assets, of which the United States is beneficial owner, does not make TGSLC a government actor; (5) TGSLC's power to garnish defaulters' wages and offset loan amounts with defaulters' tax refunds constitute government action, but neither is sufficiently related to TGSLC's challenged action here to make the challenged action government action; and (6) TGSLC's reporting to credit bureaus Plaintiff's default status is

---

4. The arguments are taken from the Department's motion, which arguments TGSLC adopts in its motion for judgment on the pleadings. *See* TGSLC Mot., p. 2.

not government action and does not deprive Plaintiff of an interest protected by due process. *See* Dept. Mot., pp. 10–18.

Plaintiff responds TGSLC is a government actor because (1) collecting on "federally defaulted student loans" requires delegation from the Secretary of the Department of Education; and (2) federal regulations control many functions of TGSLC. *See* Pltf. Opp., pp. 3–7. Plaintiff cites many federal laws and regulations which reflect "the controls exerted over TGSLC" by the Department. *See* Pltf. Opp., pp. 5–7.

Plaintiff argues in his motion for "declaratory judgment" that TGSLC is a government actor because (1) it is under contract with the Department; (2) "use[s] its Federal authority to damage Plaintiff[']s credit rating"; (3) if Plaintiff did not make payments to TGSLC, "TGSLC would subject Plaintiff to wage garnishment and income tax refund offset" which are "governmental collection tools"; (4) TGSLC is required to conduct administrative hearings when it attempts to garnish wages, intercept tax refunds, and when disputes arise over reporting defaults with credit bureaus, all of which show it is a government actor; (5) the Department "gave TGSLC it's [sic] check book (Reserve Fund) and told TGSLC to use it in collecting defaulted student loans"; (6) the Department "told TGSLC that it must act diligently in attempting to collect on the defaulted student loans and that it was to forcefully demand payment from Plaintiff's [sic]"; (7) TGSLC "told Plaintiff's [sic] that it was collecting a loan for the Department"; and (8) TGSLC deposited Plaintiff's payments into "the Department['s] … checking account." *See* Pltf. Mot., pp. 1–2, 10–15.

Defendants respond charging collection costs is not governmental action. *See* Dept. Opp., p. 5. Charging for such costs is not traditionally the exclusive prerogative of the state. *See id.; see also* Dept. Reply, pp. 2–4. "Actions which any creditor can do without invoking the power of state [sic] do not become 'governmental duties' if performed by a private entity that regularly invokes governmental authority to take other actions." Dept. Opp., p. 6 (footnote omitted). TGSLC's threats of wage garnishment and refund offset do not convert the challenged actions—charging of an allegedly unreasonable collection fee—into governmental action. *See id.*

That Congress requires administrative hearings when Federal agencies pursue wage garnishment and tax refund offset proceedings, but does not require them when private contractors collect federal debts on behalf of Federal agencies, "strongly suggests that these same actions, when performed by TGSLC, are not governmental actions." *See id.,* pp. 6–7. Although TGSLC "receives Federal funding for a public purpose, and operates under Federal statutory and administrative regulation," it "is [not] chartered by the Federal government" but rather under the laws of Texas as a non-profit corporation. *Id.,* p. 7. The only control the federal government has over TGSLC is over use of assets in the Federal Student Loan Reserve Fund, in which the federal government has an ownership interest. *Id.* The Department does not extensively supervise TGSLC on a daily basis. *See id.,* p. 8. "Except for its role in Federal tax refund offset, TGSLC is *not* the agent of the Department." *Id.* (emphasis in original).

Defendants argue: "The degree of governmental regulation of the actions of a private party is irrelevant to whether the private party's actions constitute a public function, … even if the private party operates within a program … that provides very substantial financial support and extensive regulatory oversight" of the private party. Dept. Reply, p. 4. Defendants

analogize the guaranty agency's role in the federal student loan program with a nursing home's role in the Medicaid program, as analyzed in *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), where the Court held the nursing home was not a state actor when making decisions in the day-to-day administration of the nursing home. *See Blum*, 457 U.S. at 1012, 102 S.Ct. 2777; Dept. Reply, p. 5. "Because the nature of the deed, and not the extent of State regulation of the entity that performs the deed, controls whether the deed is a 'public function,' collection action by guarantors would not be a public function even if guaranteeing student loans were a traditionally governmental function." Dept. Reply, p. 5.

Federal regulations do not mandate a particular collection cost rate, and so the rate TGSLC charged is not state action. Federal regulations merely direct the guarantor to pass reasonable collection charges on to the borrower, "subject to certain maximum and minimum levels." *See id.* (citing 34 C.F.R. § 682.410(b)(2)). These decisions are private action, regardless of the extent of federal regulation of the guaranty agency. *See id.*

The many federal laws and regulations Plaintiff lists do not support Plaintiff's claim that TGSLC has been delegated Department powers. *See* Dept. Reply, p. 6. "With two exceptions, neither relevant here, none of the 43 statutory and 52 regulatory provisions cited by Plaintiff to support his delegation or subjugation claims describes a function or responsibility assigned by statute to the Secretary ...." *Id.; see also id.,* pp. 8–10. Defendants also distinguish a case cited by Plaintiff, *Canterbury Career School v. Riley. See id.,* pp. 6–8.

Plaintiff in reply argues two actions by TGSLC constitute "takings" in violation of the Fifth Amendment due process clause: (1) when Plaintiff "made any payment on the defaulted student loan to TGSLC" (Pltf.Reply, p. 3); (2) "when TGSLC makes an accounting decision to divert part of the payment that Plaintiff made, from the Reserve Fund ... into the Operating Fund" (*id.*). As to the first "taking," Plaintiff disputes that TGSLC's "mere threat" to garnish Plaintiff's wages or intercept his tax refund does not rise to the level of governmental action, as it is governmental coercion, a form of state action. *See* Pltf. Reply, pp. 3–4 (citing *Sutton v. Providence St. Joseph Medical Center,* 192 F.3d 826, 836 (9th Cir.1999)).

Plaintiff argues that TGSLC's reporting of his default to national credit bureaus constitutes state action, as does its ability to "conduct collection activity which include[s] making those threats of wage garnishment and IRS income tax refund intercept." *See id.,* p. 4. As to the second taking, Plaintiff asserts the Department "authorized TGSLC to make payments from the Reserve Fund, which is an asset of the United States, to the Operating Fund, which is an asset of TGSLC." *Id.* "In making the transfer, TGSLC characterized part of the Plaintiff's payment as being for their collection costs, and diverted that sum for their own use," which action "completes the second taking." *Id.* Plaintiff asserts because his payments, including the allegedly unreasonable collection costs, are deposited first into the Reserve Fund (an asset of the United States), and then only "reasonable" collection costs are transferred out of the Reserve Fund into the Operating Fund, the "unreasonable" portion of the collection costs remain in the Reserve Fund, and so the Department acts as "an equitable trustee for the Plaintiff's money." *Id.*

The first step in the state actor analysis is to isolate the specific conduct of which Plaintiff complains. *See Blum,* 457 U.S. at 1004, 102 S.Ct. 2777. Plaintiff complains he has been denied a hearing to determine

the reasonableness of the collection charge imposed by TGSLC. Plaintiff has paid only part of the collection charge when he decided to pursue loan rehabilitation, as a part of the required twelve monthly payments that make him eligible to receive rehabilitation. *See* 34 C.F.R. 682.405(a)(2) ("A loan is considered to be rehabilitated only after the borrower has made one voluntary reasonable and affordable full payment each month ... for 12 consecutive months in accordance with this section, and the loan has been sold to an eligible lender."). In the context of loan rehabilitation, the regulations require a guaranty agency (TGSLC) to provide a borrower:

a written statement confirming the borrower's reasonable and affordable payment amount, as determined by the agency, and explaining any other terms and conditions applicable to the required series of payments that must be made before a borrower's account can be considered for repurchase by an eligible lender. The statement must inform borrowers of the effects of having their loans rehabilitated (e.g. credit clearing, possibility of increased monthly payments). The statement must *inform the borrower of the amount of the collection costs to be added to the unpaid principal at the time of the sale. The collection costs may not exceed 18.5 percent of the unpaid principal and accrued interest at the time of the sale.*

*See* 34 C.F.R. § 682.405(b)(1)(iv) (emphasis added). The guaranty agency must also provide the borrower "with an *opportunity to object* to terms of the rehabilitation of the borrower's defaulted loan." 34 C.F.R. § 682.405(b)(1)(v) (emphasis added).

Federal regulation requires TGSLC to meet certain requirements in administering the Federal Family Education Loan program ("FFEL"). *See* 34 C.F.R. § 682.410(b). Among these requirements is the following:

(2) Collection charges. Whether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, *the guaranty agency shall charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim.* These costs may include, but are not limited to, all attorney's fees, collection agency charges, and court costs. Except as provided in §§ 682.401(b)(27) and 682.405(b)(1)(iv), the amount charged a borrower must equal the lesser of–

(i) The amount the borrower would be charged for the cost of collection under the formula in 34 CFR 30.60; or

(ii) The amount the same borrower would be charged for the cost of collection if the loan was held by the U.S. Department of Education.

34 C.F.R. § 682.410(b)(2).[5] Plaintiff asserts this provision restricts TGSLC's ability to charge collection costs to just "reasonable"[6] collection costs. *See, e.g.,* FAC, ¶ 51. Plaintiff alleges TGSLC imposed collection costs on Plaintiff pursuant to these regulations, and defied these regula-

---

**5.** Subsections (i) and (ii) do not appear to apply to the facts here. Plaintiff asserts the basis for TGSLC's imposition of collection costs is 34 C.F.R. § 682.405(b)(1)(iv), and collection costs imposed under that section are excepted from the remainder of the last sentence of § 682.410(b)(2). *See* 34 C.F.R. § 682.410(b)(2).

**6.** What constitutes "reasonable" costs is not clear. The second sentence of 34 C.F.R. § 682.410(b)(2) imposes no limit on what costs may be included under reasonable costs: "These costs may include, but are not limited to *all* attorney's fees, collection agency charges, and court costs." This sentence suggests all costs incurred, if incurred in connection with collecting on a defaulted loan, are reasonable.

tions when it denied Plaintiff a "meaningful opportunity to object" to them. *See* FAC, ¶ 59.

■ The first issue is whether TGSLC was a state actor when it charged Plaintiff allegedly unreasonable collection fees and then denied Plaintiff an administrative hearing on the reasonableness of these fees. Four state action tests are applied: (1) the "public function" test; (2) the "close nexus" test; (3) the "joint participant" or "joint action" test; and (4) the "state compulsion" test.

TGSLC is not a state actor under the "public function" test. TGSLC's action was to charge Plaintiff an allegedly "unreasonable" collection fee as part of rehabilitating his student loan. Is TGSLC's act of charging collection fees in the context of student loan rehabilitation one that normally is exclusively reserved to the State? *See Flagg Brothers,* 436 U.S. at 158, 98 S.Ct. 1729. Although the government can charge collection fees, collection fees are universally charged by private lenders who make and collect student loans. Collection of defaulted loans, and the concomitant imposition of collection fees or costs, is not a purely governmental activity, nor an activity traditionally reserved to the State. It is commercial conduct related to debt enforcement, whether the creditor is private or public. Even if the activity is narrowed to the collection of federally-insured student loans, collection agencies hired by the federal government to collect on these loans do not perform a public function when assessing collection charges to the borrower. TGSLC's actions here do not amount to a public function.

TGSLC is not a state actor under the state compulsion test, because it was not compelled by State law to charge a particular fee. Although regulations exist which require a guaranty agency to engage in certain minimal collection activities, Plaintiff does not take issue with the means and manner in which TGSLC pursued him for collection. His dispute is solely with the amount of collection fees TGSLC charged. Although minimal collection activity will result in collection fees being incurred, Plaintiff does not argue he should not be obliged to pay any collection fees; in fact he has unilaterally set an amount which he "deems" to be reasonable and included that in his confession of judgment. His quarrel is that he should not be obliged to pay "unreasonable" collection fees. Plaintiff does not assert that the fees TGSLC charged him were incurred solely because TGSLC followed the minimum collection requirements. He does not argue the collection efforts the federal regulations require of TGSLC are unreasonable or excessive, thus unnecessarily inflating the collection costs. His only claim is the amount of the actual collection fee imposed is excessive.

Similarly, no "close nexus" exists between the federal government and TGSLC such that TGSLC becomes a state actor for purposes of the amount of collection charges. In the loan rehabilitation context, federal regulations leave calculation of collection costs to the guaranty agency. Although these regulations restrict the guaranty agency's discretion (they require the fee be "reasonable" [7] and no more than 18.5% of the outstanding loan balance; [8]

---

7. It is not clear whether this word places any limit on the amount of collection charges a guaranty agency may charge. *See supra* footnote ____.

8. The last sentence of section 682.410(b)(2) states: "Except as provided in

§§ 682.401(b)(27) and 682.405(b)(1)(iv), the amount charged a borrower must equal the lesser of—(i) The amount the same borrower would be charged for the cost of collection under the formula in 34 CFR 30.60; or (ii) The amount the same borrower would be

they require guaranty agencies to engage in a certain minimum amount of collection activity (*see* 34 C.F.R. § 682.410(b)(6), (7))), they do not coerce TGSLC to charge the fees it charges. These requirements set a ceiling on the guaranty agency's power to charge collection fees. The requirements do not create a sufficiently close nexus to render state action, the amount of collection costs the guaranty agency charges.

The joint participant theory does not make, state action, TGSLC collection charge decisions. The regulations simply provide general duties TGSLC must perform. The guaranty agency must provide defaulted borrowers with the option of loan rehabilitation, pursuant to federal regulation. If the borrower fulfills the prerequisites for rehabilitation, the guaranty agency must "attempt to secure" a lender to buy the borrower's loan. The guaranty agency must inform the borrower of various terms and conditions of rehabilitation, including the amount of collection fees. The collection fees must be reasonable, and no more than 18.5% of the value of the loan plus interest. The guaranty agency must give the borrower an opportunity to object to the terms of rehabilitation. There are no additional Department regulations. TGSLC is given broad discretion to charge collection fees, the amount of which the guaranty agency decides, so long as the total charge does not exceed 18.5% of the loan plus interest.

*Blum v. Yaretsky* is applicable. In *Blum v. Yaretsky*, the Court found a nursing home not a state actor even though it received state subsidization for operating and capital costs, received payment from the state of the medical expenses of over 90% of the patients, and was licensed by the state. *See* 457 U.S. at 1011, 102 S.Ct.

2777. "As we have previously held, privately owned enterprises providing services that the State would not necessarily provide, even though they are extensively regulated, do not fall within the [joint participant doctrine]." *Id.* "That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business." *Id.*

The government is no more intertwined in the guaranty agency's actions pertaining to loan rehabilitation than it is in the nursing home's decisions to transfer patients between medical facilities. The nursing home's decisions to transfer are based on the nursing home's discretionary medical evaluations. This evaluation is left up to the nursing home. TGSLC's decisions regarding collection charges are as discretionary. TGSLC, as a guaranty agency for federal student loans, must offer loan rehabilitation to borrowers. If the borrower makes mandatory timely payments, the guaranty agency is obliged to "attempt to secure" a lender to buy his loan. The guaranty agency must present the terms of the rehabilitation to the borrower, and the guaranty agency must give the borrower an opportunity to object to these terms. At this time, the guaranty agency must inform the borrower of the amount of collection charges it will impose. This charge is, however, almost completely within the discretion of the guaranty agency. The only restrictions are that collection charges be no more than 18.5% of the loan balance plus interest, and that they be "reasonable." The agency must give a borrower the opportunity to object to the

---

charged for the cost of collection if the loan was held by the U.S. Department of Education." Because the collection charges im-

posed here appear to be pursuant to § 682.405(b)(1)(iv), the remaining provisions of § 682.410(b)(2) do not apply.

terms of rehabilitation, which arguably includes the amount of collection costs, but the regulations do not assure a borrower favorable terms (in fact they warn that monthly loan payments may go up after rehabilitation). They merely assure that the borrower will be informed of the terms of rehabilitation, and will have an opportunity to voice objections.

For the foregoing reasons, TGSLC collection charge decisions are not state action. Plaintiff's motion for declaratory judgment on the pleadings is DENIED as to this issue, and TGSLC's and the Department's motions to dismiss for failure to state a claim are GRANTED.

### 2. *Protected Property Right?*

Plaintiff asserts TGSLC charged an "unreasonable" collection fee of 18.5% of the total amount of his loan, and denied him the opportunity to "object" to this fee, which right federal regulations gave him. TGSLC effectively required Plaintiff to choose to either not rehabilitate his loan and continue to receive adverse credit reports, or rehabilitate his loan but accept an allegedly unreasonable collection fee.

Defendants argue Plaintiff has no protectable property interest here because (1) he does not possess a "clear entitlement" to loan rehabilitation; (2) Department regulations do not grant a right to an administrative hearing to contest the terms of a loan rehabilitation agreement, nor do they contain an entitlement to particular terms or conditions for loan rehabilitation; and (3) Department regulations do not require an administrative hearing for the purpose of contesting collection charges prior to reporting a defaulted loan to credit bureaus. *See* Dept. Mot., pp. 18–28.

This issue need not be decided as it has already been decided TGSLC is not a state actor.

### C. *RIGHT TO ENFORCE FEDERAL REGULATIONS*

▮ Defendants argue Plaintiff fails to state a claim under Title VII of the Higher Education Act ("HEA"), 20 U.S.C. §§ 1071 *et seq.*, because the HEA creates no private right of action for borrowers. *See* Dept. Mot., pp. 28–29. Also, the injunctive and declaratory relief Plaintiff seeks from the Department is barred by 20 U.S.C. § 1082(a)(2). *See id.*, pp. 29–33.

The Ninth Circuit applies a four-factor test to determine whether a private right of action to enforce federal regulations exists: (1) is the plaintiff one of the class for whose especial benefit the statute was enacted; (2) does the legislative history of the Act in question suggest an intent to either create or deny a private right of action; (3) is an implied right of action consistent with the purposes of the legislative scheme; and (4) is the cause of action one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law. *See Parks Sch. of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). "[T]he critical inquiry is congressional intent," although "before a private cause of action may be inferred from a statute, 'ineluctable inferences [must] arise from the Act to compel such a finding.'" *Id.* "If the statute itself provides 'a particular remedy or remedies,' we should not add others." *Id.*

The first factor appears to favor a private right of action. Plaintiff is a student loan recipient, arguably the intended beneficiary of the HEA.

The second and third factors do not favor a private right of action. "The legislative history behind the HEA is silent on the issue of private rights of action." *See Parks School*, 51 F.3d at 1484. 20 U.S.C. § 1082(g) gives the Secretary of the Department the right to impose a civil penal-

ty on a "lender or guaranty agency" where it is determined, after notice and a hearing "that a lender or a guaranty agency—(A) has violated or failed to carry out any provision of this part [20 U.S.C.A. § 1071 et seq.] or *any regulation prescribed under this part,* or (B) has engaged in substantial misrepresentation of the nature of its financial charges." § 1082(g) (emphasis added). "[T]he Secretary may impose a civil penalty upon such lender or agency of not to exceed $25,000 for each violation, failure, or misrepresentation." § 1082(g). "If the statute itself provides 'a particular remedy or remedies,' we should not add others." *Parks School,* 51 F.3d at 1484.

The last factor disfavors a private right of action. Plaintiff complains essentially that his collection charges are excessive. This amounts to a demand for an accounting of collection charges TGSLC imposed. Such a claim is more appropriately advanced in state court.

On balance, the foregoing factors disfavor a private right of action to enforce HEA regulations. Defendants' motions for judgment on the pleadings and to dismiss on this issue is GRANTED.

### D. *ADDITIONAL MATTERS*

Plaintiff in his motion requests the court decide following additional matters: (1) the Department is "directly liable to Plaintiff's [sic] for unjust enrichment" based on the presence in the Reserve Fund of excess collection costs (*see* Pltf. Mot., pp. 7–11); (2) the collection costs TGSLC charges are unreasonable (*see id.,* pp. 20–23); and (3) the Administrative Procedure Act applies to TGSLC's actions and compels a hearing (*see id.,* pp. 5–6). Defendants argue these issues are beyond the scope of the FAC, and then address the arguments on the merits. *See* TGSLC Opp. pp. 5–11; Dept. Opp., pp. 1–3, 10–15. Plaintiff's reply asserts these issues, especially the challenge to reasonableness of

the collection fees, may be decided here. *See* Pltf. Reply, pp. 2–3. Plaintiff then provides additional support for his arguments, and disputes Defendants' arguments. *See id.,* 6–10.

Plaintiff's attempt to obtain rulings on these issues is misplaced. These additional issues are not presented as claims in Plaintiff's FAC, and cannot be addressed in a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Rule 12(c), like Rule 12(b) motions, permits judgment based only on the pleadings, i.e. the complaint and answer. Although Plaintiff asserts, as a factual matter, that TGSLC's collection costs are "grossly in excess of reasonable collection costs" (*see, e.g.,* FAC, ¶ 51), Plaintiff does not state a claim regarding reasonableness of the costs, or request declaratory relief on this issue. Plaintiff's claims are only that TGSLC's and the Department's denial of hearing before imposing the collection costs violates Fifth Amendment due process and Department regulations. Plaintiff has not pled an unjust enrichment claim, or any claim under the Administrative Procedure Act. The Plaintiff cannot seek advisory rulings by a judgment on the pleadings as to unasserted claims. Plaintiff's motion for judgment on the pleadings as to these additional matters is DENIED.

### V. *CONCLUSION*

For the foregoing reasons, defendant Secretary of the United States Department of Education's ("Department") motion to dismiss and defendant Texas Guaranteed Student Loan Corporation's ("TGSLC") motion for judgment on the pleadings are GRANTED, and plaintiff George W.'s motion for partial declaratory judgment on the pleadings is DENIED, as follows:

1. Plaintiff's constitutional claim against TGSLC and the Department for violation of Fifth Amendment due process is DISMISSED WITH PREJUDICE because TGSLC is not a state actor;

2. Plaintiff's claims to enforce certain federal regulations against TGSLC are DISMISSED WITH PREJUDICE because no private right of action exists to challenge these claims;

3. The additional claims Plaintiff raises for the first time in his motion for partial "declaratory" judgment ARE NOT CONSIDERED because they are not raised in Plaintiff's First Amended Complaint.

SO ORDERED.